UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LAMONT BEASLEY,

                                    Petitioner,                   REPORT AND
                                                                  RECOMMENDATION
            -against-
                                                                  14-CV-1917 (DLI)
SUPERINTENDENT PAUL GONYEA,

                                    Respondent.
---------------------------------------------------------------x

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

        On March 17, 2014, Lamont Beasley ("Beasley" or "petitioner") filed the pending *pro se*

petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254.  See Petition

for Habeas Corpus (Mar. 17, 2014) ("Pet."), Electronic Case Filing ("ECF") Docket Entry

("DE") #1.  Beasley challenges his September 5, 2007 conviction for Criminal Possession of a

Controlled Substance in the Second Degree, contending that: (1) the trial court erred in denying

petitioner's statutory speedy trial motion; (2) the prosecution violated its discovery obligations

and failed to correct false testimony at the suppression hearing and trial; (3) the trial court

deprived petitioner of a fair trial by failing to provide a limiting instruction; (4) petitioner is

actually innocent; (5) his trial counsel's performance was ineffective for a variety of reasons; and

(6) his appellate counsel's performance was ineffective for multiple reasons.  See generally id.;

see also Supplemental Affidavit in Opposition to Petition for a Writ of Habeas Corpus (July 12,

2019) ("Supp. Aff."), DE #20; Supplemental Mem. of Law (July 12, 2019) ("Supp. Mem."), DE

#20.[1]

        For the reasons that follow, this Court recommends that the Petition be denied in its

_____

[1] Although petitioner provides a different numerical ordering to his six habeas claims, see generally Pet.
1-22, this Court has reorganized petitioner's claims so as to avoid unnecessary repetition in this opinion.

entirely.

## FACTUAL BACKGROUND

I.    **The Crime**

Petitioner's conviction for criminal possession of a controlled substance in the second

degree arises out of the May 3, 2005 arrest of Jermaine Moreno ("Moreno") by New York City

Police Officers John Miedreich ("Officer Miedreich" or "Miedreich") and Andre Rosa ("Officer

Rosa" or "Rosa").  See Affidavit in Opposition to Petition for a Writ of Habeas Corpus (July 2,

2014) ("Aff. in Opp.") Ex. A, August 29, 2007 Trial Transcript ("Trial Tr.") at 150-58, DE #7-

1.[2]  After arresting Moreno for the sale of heroin at approximately 7:45 p.m., the officers drove

Moreno to the 75th Precinct.  See id. at 158.  During the drive, Moreno stated that he had

recently been released from jail, see id. at 159, and, at the Precinct, he volunteered information

regarding criminal activity by others, see id. at 160.  In return for this information, the officers

stated that they would speak to the prosecutors, who might be able to help Moreno with his case.

See id. at 169-70.

Moreno informed the officers that he knew individuals from whom he could purchase

narcotics, see id. at 160, and, at around 9:00 p.m., the officers permitted Moreno to use his

cellphone to attempt to arrange drug transactions, see id. at 161-62.  Officer Miedreich could

hear Moreno's telephone phone conversations through the phone's external speaker.  See id. at

164.  Beginning at around 10:00 p.m., Moreno made multiple phone calls to an individual whom

he referred to as "L," telling "L" that he needed a "big eight," which Moreno described to the

---

[2] With one exception, the entire trial transcript, spanning five days, is consecutively paginated. Inexplicably, the transcript of the testimony of the one defense witness, Jermaine Moreno, is separately paginated with the first page of testimony designated as page 2, even though it occurred on the third day of trial. The portion of the transcript immediately preceding Moreno's testimony ends at page 370, and picks up at page 371 following Moreno's testimony.  For the sake of clarity, citations to Moreno's trial testimony are preceded by the date on which he testified, i.e., 8/31/07.

officers as approximately 150 grams of cocaine. See id. at 162.[3]  Moreno asked "L" to drop off the "big eight" in front of the home of Moreno's mother. See id. at 164.  Moreno also informed the police that "L" was a tall, bald, black male, see id. at 163, and that "L" would be driving a rented blue Ford Focus with lightly-tinted windows, see id. at 166.  Moreno referred to "L" as his girlfriend's cousin. Id. at 162-63.

The police set up a perimeter outside Moreno's mother's house at approximately 10:30 p.m., see id. at 223-25, and at around 11:15 or 11:20 p.m., Officer Rosa observed a blue Ford Focus, with windows having a light tint, heading towards Moreno's mother's home. See id. at 228-29.  Officer Rosa pulled over the car, and observed petitioner sitting in the front seat. See id. at 230-31.  Officer Rosa shone his flashlight into the car, and observed a black bag in the center console of the vehicle, with a large, white rocky substance visible inside the black bag. See id. at 232-33.  Petitioner was placed under arrest and transported to the 73rd Precinct. See id. at 233-34.  A laboratory analysis of the substance observed by Officer Rosa was later determined to be cocaine, weighing approximately four and one-half ounces. See id. at 356-57.

## II.    Pretrial Proceedings, Trial, and Conviction

On May 5, 2005, petitioner was arraigned on a felony complaint charging him with one count each of Criminal Possession of a Controlled Substance in the Second Degree, Criminal Possession of a Controlled Substance in the Third Degree, and Criminal Possession of a Controlled Substance in the Seventh Degree. See Aff. in Opp. Ex. Q, People's Answer to Petitioner's Second Motion to Vacate his Judgment of Conviction, DE #7-4 at pp. 129-30.[4]  The

---

[3] As discussed in greater detail below, see infra, pp. 6-7, Moreno testified as a defense witness at trial and disputed the contents of his calls with "L"; he admitted to calling petitioner multiple times on the evening of May 3, 2005, but denied that he had offered to sell, or arranged the sale of, narcotics.

[4] The various exhibits to the parties' respective submissions have not been docketed into the ECF court file as separate attachments, making it difficult to locate each exhibit in the lengthy record.  To ameliorate

case was presented to a grand jury, and on June 15, 2005, petitioner was arraigned on the resulting indictment, which contained the same three drug possession charges. See Aff. in Opp. Ex. B, Petitioner's Appellate Division Brief, DE #7-2 at pp. 50-51 (describing the early procedural developments in petitioner's case). The prosecution announced its readiness for trial, but defense counsel asked that the trial court inspect the grand jury minutes. See Aff. in Opp. Ex. A, June 15, 2005 Pretrial Transcript ("6/15/05 Tr."), DE #7-1 at pp. 2-4. The trial court agreed, and adjourned the case until August 17, 2005. See id. at p. 4. On that date, the prosecution informed the trial court that it would be providing the court with the requested grand jury minutes. See Aff. in Opp. Ex. A, August 17, 2005 Pretrial Transcript, DE #7-1 at p. 11. Defense counsel asked the trial court to adjourn the case to "the latter part of September," which it did, adjourning the case until September 28, 2005. See id. at pp. 11-12. Meanwhile, the prosecution provided the trial court with the requested grand jury minutes on August 30, 2005. See Aff. in Opp. Ex. C, Respondent's Appellate Division Brief, DE #7-2 at p. 51.

After a series of additional procedural events, see id. at pp. 51-56, on September 11, 2006, the court conducted a pretrial suppression hearing to determine whether the stop of petitioner's vehicle was unlawful and whether the cocaine recovered by the police from the car should be suppressed at trial. See Aff. in Opp. Ex. A, Suppression Hearing Transcript ("Supp. H. Tr.") at 1-58, DE #7-1. During this hearing, the court heard testimony from Officers Miedreich and Rosa, who recounted events that largely mirror those described above. See id.

On September 28, 2006, Justice Abraham Gerges issued a memorandum denying petitioner's request to suppress the cocaine found in his vehicle. See Pet. Ex. F, September 28,

---

this problem, citations in this opinion to the parties' exhibits – other than to the transcripts of the pretrial suppression hearing and trial – do not utilize the referenced document's internal pagination system but instead cite to the docket entry ("DE") number, followed by the pagination imprinted by the ECF system, e.g., DE #7-4 at pp. 129-30.

2006 Memorandum ("9/26/06 Mem."), DE #1 at pp. 48-49.  The substance of the court's

memorandum states as follows:

> It is well-settled that an automobile stop is a limited seizure of the person which at least
> needs reasonable suspicion.  This was furnished by the statement of Moreno, an
> identified accomplice.  Indeed, the statement of an accomplice implicating another in
> criminal activity provides the police with probable cause to arrest the other individual.
> As the probable cause standard is more rigorous than for reasonable suspicion, the
> vehicle stop was lawful, as was [petitioner's] subsequent arrest.  The viewing of the drugs
> by the officer likewise provided probable cause for the arrest.  All items were recovered
> pursuant to a lawful arrest and are, therefore, admissible.  [Petitioner's] motion to
> suppress is hereby denied . . . .

See id. (citations and internal quotation marks omitted).

Meanwhile, on September 12, 2006, defense counsel moved to dismiss the indictment,

alleging that the People had violated New York's statutory speedy trial rule under New York's

Criminal Procedure Law § 30.30 ("section 30.30").  See generally Pet. Ex. C, December 14,

2006 Memorandum ("12/14/06 Mem."), DE #1 at pp. 35-37 (describing defense counsel's

motion to dismiss).  Justice Neil Firetog issued a memorandum decision and order dated

December 14, 2006, denying defense counsel's motion to dismiss, holding that only 173 days of

section 30.30's six-month speedy trial time limit were chargeable to the People.  See id.

Petitioner's trial began on August 29, 2007, before Justice Robert K. Holdman and a jury,

in Supreme Court, Kings County.  See Trial Tr. at 106, DE #7-1.  The prosecution called

Officers Miedreich and Rosa to testify to the events described above, with defense counsel

extensively cross-examining each of these witnesses.  See id. at 148-207 (Officer Miedreich),

214-348 (Officer Rosa).  Defense counsel questioned Officer Miedreich regarding whether he

had taken any notes during his May 3, 2005 conversation with Moreno, see id. at 183-85;

examined Officer Rosa regarding the same, see id. at 305-13, and questioned Officer Rosa about

the bags in which the cocaine was recovered, see id. at 238-43.[5]  Throughout the trial, defense counsel also objected to the prosecution's introduction of multiple pieces of evidence.  See, e.g., id. at 286-92, 371-74.

Petitioner did not testify in his own defense.  Instead, petitioner called Moreno as a witness on his behalf.  See Aff. in Opp. Ex. A, 8/31/07 Trial Tr. at 2, DE #7-1.  On the stand, Moreno admitted to multiple prior drug-related convictions and an arrest for domestic violence.  See id. at 5-7, 25, 41-43.  He also stated that on May 3, 2005, he observed petitioner drive up to Moreno's mother's house in a blue Ford, and enter the house.  See id. at 14-15.  According to Moreno, while petitioner was inside the house, a Puerto Rican man named Jason drove up to the house, and had, in his car, a block of crack cocaine, worth approximately $6,000, encased in multiple bags.[6]  See id. at 15-17, 38, 45-46.  Moreno stated that he took the crack cocaine from Jason's vehicle and placed it in the middle compartment of petitioner's car under some papers, and that he intended to retrieve the drugs after completing a separate drug sale.  See id. at 15-17.  Moreno was subsequently arrested by Officers Meidreich and Rosa for possession of heroin.  See id. at 17.  Addressing the phone calls he made while in police custody, Moreno denied ever discussing a "big eight" or 125 grams of crack cocaine with petitioner.  See id. at 22-23.  Instead, Moreno testified that he had asked petitioner to pick him up on the street of Moreno's mother's house to go to a club.  See id. at 20.  Moreno also claimed that his cellphone had a walkie-talkie feature but that the officers could not hear what petitioner said during these phone conversations.

---

[5] During Officer Rosa's cross-examination, defense counsel elicited testimony that the officer had vouchered a clear plastic bag, but not the black plastic bag he had observed when he initially looked into petitioner's car.  See Trial Tr. at 238-43, DE #7-1.  Officer Rosa could not recall what happened to the black plastic bag.  See id.

[6] Years later, Moreno admitted that he had fabricated the identity of Jason and that Jason was actually an individual named Raul Figueoa.  See Aff. in Opp. Ex. U, Petitioner's Third Motion to Vacate his Judgment of Conviction, Moreno Letter regarding Raul Figueoa, DE #7-4 at p. 225.

<u>See</u> <u>id.</u> at 58-59.

Regarding what transpired after petitioner was arrested, Moreno stated that upon learning of petitioner's arrest, Moreno provided petitioner with a letter asserting that the cocaine found in petitioner's car belonged to Moreno and that petitioner had no knowledge of the drugs.  <u>See</u> <u>id.</u> at 26-27; <u>see also</u> Aff. in Opp. Ex. N, Petitioner's First Motion for a Writ of Error *Coram Nobis*, Jermaine Moreno Letter ("Moreno Ltr."), DE #7-3 at pp. 48-49.  Upon further questioning by defense counsel, Moreno admitted that in March 2006, while incarcerated (for violating his parole), he contacted the District Attorney's Office about threats he received from other inmates while on Rikers Island.  <u>See</u> 8/31/07 Trial Tr. at 29-32, DE #7-1.  Moreno claimed that these March 2006 statements to the District Attorney's Office about receiving threats had been fabricated.  <u>See</u> <u>id.</u> at 67.  He recounted that he met with an Assistant District Attorney about the alleged threats, and agreed to make a recorded phone call to petitioner to discover who was behind the threats and to get petitioner to admit that petitioner, not Moreno, had possessed the cocaine.  <u>See</u> <u>id.</u> at 29-32, 36, 66-67.  Although Moreno had stated on the call that it was petitioner who had written the exculpatory letter, and that Moreno had simply rewritten it, <u>see</u> <u>id.</u> at 32-33, Moreno claimed at trial that that too was a lie and that he, not petitioner, had written the exonerating letter.  <u>See</u> <u>id.</u>  During the call, petitioner denied having anything to do with the alleged threats levied at Moreno or that he had any knowledge of the drugs in the car prior to petitioner's arrest.  <u>See</u> <u>id.</u> at 33.  On cross-examination, when asked why he would fabricate the threats and make a recorded call, Moreno stated he was "playing a game" with the District Attorney's Office. <u>See</u> <u>id.</u> at 67-68.

On September 5, 2007, the jury found petitioner guilty of the only count submitted for its consideration, criminal possession of a controlled substance in the second degree.  <u>See</u> Trial Tr.

at 521, DE #7-1.  Petitioner was sentenced, on January 31, 2008, to 12 years of imprisonment

with 5 years of supervised release.  See Pet. at 1.

## III.    Post-Conviction Proceedings

### A.  Direct Appeals and Collateral Challenges in State Court

On appeal to the Appellate Division, Second Department, petitioner (who was

represented by new counsel) submitted a 36-page appellate brief asserting three claims:

(1) the trial court erred in denying petitioner's statutory speedy trial motion to dismiss the indictment pursuant to New York Criminal Procedure Law § 30.30 because the trial court should have charged the People with the 42 days from August 17 to September 28, 2005;

(2) trial counsel was ineffective because:
      (a) trial counsel did not object when the prosecution introduced into evidence Moreno's out-of-court statements to Officer Miedreich at the 75th Precinct;
      (b) trial counsel failed to request a limiting instruction regarding Moreno's out-of-court statements to Officer Miedreich at the 75th Precinct; and
      (c) trial counsel incompetently handled the People's loss of a black plastic bag;

(3) petitioner was denied his right to a fair trial by the trial court's failure to give a limiting instruction with respect to Moreno's out-of-court statements at the 75th Precinct and by the trial court's failure to give an adverse inference instruction regarding the People's loss of the black plastic bag.

See generally Aff. in Opp. Ex. B, DE #7-2 at pp. 2-45; see also Supp. Aff. ¶ 18.

By a three-to-two-vote, the Second Department affirmed petitioner's conviction on

January 12, 2010.  See People v. Beasley, 69 A.D.3d 741, 893 N.Y.S.2d 201 (2d Dep't 2010).

The court addressed in detail petitioner's first claim, holding that the trial court had properly

denied defense counsel's motion to dismiss the indictment pursuant to section 30.30.  Id. at 742.

Specifically, the court reasoned that the 42-day adjournment from August 17, 2005 to September

28, 2005, to allow the People to provide and the court to inspect the grand jury minutes, to afford

the court time to rule on the corresponding defense motion to dismiss, and "[t]o accommodate

[petitioner's] counsel," was properly excluded from the time charged to the People.  See id. at

744, 742.  This included a period of 13 days, from August 17, 2005 (when the case was called) and August 30, 2005 (when the People delivered the grand jury minutes to the trial court).  See id. at 743-44.  Addressing the two remaining claims, the appeals court held that "[petitioner's] claim that he was denied the effective assistance of counsel is without merit" and "[petitioner's] remaining contentions are unpreserved for appellate review and, in any event, are without merit."  Id. at 744.  Two justices dissented with respect to the court's holding on petitioner's speedy trial claim, but agreed with the court's rejection of petitioner's second and third arguments.  See generally id. at 744-50.

Petitioner successfully applied for leave to appeal to the New York Court of Appeals, see People v. Beasley, 14 N.Y.3d 895, 903 N.Y.S.2d 783 (2010), raising a single issue: whether the trial court's denial of his statutory speedy motion was erroneous.  See Aff. in Opp. Ex. E, Petitioner's New York Court of Appeals Brief, DE #7-2 at pp. 139-57; see also People v. Beasley, 16 N.Y.3d 289, 291, 921 N.Y.S.2d 178, 179 (2011).  On March 24, 2011, the Court of Appeals affirmed the Second Department's order, holding that the Court of Appeals was without jurisdiction to consider the merits of petitioner's claim – i.e., whether the 13 days should have been charged to the prosecution – because the defense had not preserved the claim for appeal by asserting it before the motion court deciding the section 30.30 motion.  See Beasley, 16 N.Y.3d at 293, 921 N.Y.S.2d at 180 (petitioner's legal argument was unpreserved by his failure to "draw the [trial] court's attention to the discrete periods that he now claims should have been chargeable to the People pursuant to CPL 30.30 and to explain why").  The Court of Appeals was therefore precluded from considering the merits of his claim.  See id.

On October 19, 2011, petitioner, through new counsel, filed his first a motion to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10 ("section 440.10").  See

Aff. in Opp. Ex. I, Petitioner's First Motion to Vacate his Judgment of Conviction, DE #7-2 at

pp. 282-303 (produced in part).[7]  Petitioner argued that trial counsel was ineffective in failing to

preserve for appellate review his statutory speedy trial argument.  Id.  Justice Albert Tomei

denied petitioner's motion on April 2, 2012, holding that petitioner's ineffective assistance of

counsel claim was procedurally barred under section 440.10(2)(c), as petitioner could have raised

it on his direct appeal.  See Pet. Ex. D, Decision and Order (Apr. 2, 2012) ("4/2/12 D&O"), DE

#1 at pp. 39-40.  Addressing the merits, the court held that trial counsel's failure to raise the

speedy trial issue did not constitute ineffective assistance, since the Appellate Division had

rejected the argument on the merits.  See id.  On January 23, 2013, Justice Thomas A. Dickerson

of the Second Department denied petitioner's application for leave to appeal to the New York

Court of Appeals.  See Pet. Ex. E, Decision and Order on Application (Jan. 23, 2013), DE #1 at

p. 45.

        Petitioner then filed in the Second Department, via *pro se* motion dated June 14, 2012, a

common law writ of error *coram nobis*, arguing that appellate counsel was ineffective in failing

to argue that (1) the drugs seized from petitioner's car should have been suppressed because the

evidence at the suppression hearing did not show that Moreno was a reliable informant under the

*Aguilar-Spinelli* test; (2) since the evidence introduced at trial did not show petitioner's

knowledge that the cocaine was in his car, petitioner's guilt was not proven beyond a reasonable

doubt; and (3) trial counsel was ineffective in failing to preserve for review the claim that the 13

days between August 17 and August 30, 2005 should have been charged to the People.  See Aff.

in Opp. Ex. N, DE #7-3 at pp. 4-56 (with attachments).  After this motion was denied, see People

---

[7] Respondent's Affidavit in Opposition mistakenly inverts the exhibit letters for petitioner's First Motion
to Vacate and Respondent's Answer to Petitioner's First Motion to Vacate, erroneously listing the former
as Exhibit H, while submitting the latter as Exhibit I.  See Aff. in Opp. ¶ 37.

v. Beasley, 101 A.D.3d 743, 954 N.Y.S.2d 495 (2d Dep't 2012), petitioner unsuccessfully sought permission to appeal this decision and order to the New York Court of Appeals, see People v. Beasley, 20 N.Y.3d 1095, 965 N.Y.S.2d 791 (2013) (Pigott, J.).

Meanwhile, by motion dated October 30, 2012, petitioner moved, for a second time, to vacate his judgment of conviction pursuant to section 440.10. See Aff. in Opp. Ex. P, Petitioner's Second Motion to Vacate his Judgment of Conviction, DE #7-4 at pp. 2-71 (with attachments). Petitioner argued that (1) he had recently obtained newly discovered evidence, which he attached to his motion (at pp. 61-62) as Exhibit A (petitioner's felony complaint), see id. at pp. 13-16; (2) the People violated their obligations under People v. Rosario and Brady v. Maryland, and by failing to provide petitioner with his felony complaint and "information concerning Moreno's involvement," see id. at pp. 17-25; (3) the felony complaint proves that the prosecution introduced perjured testimony at the suppression hearing and trial, see id. at pp. 26-30; (4) trial counsel was ineffective see id. at pp. 31-48; (5) petitioner was actually innocent, see id. at pp. 49-55; and (6) the trial court had erred in failing to give a limiting instruction during trial, see id. at 56-58. Supreme Court Justice Albert Tomei denied the second motion to vacate on May 20, 2013, holding that petitioner's claims were procedurally barred and, in any event, were without merit. See Pet. Ex. D, Decision and Order (May 20, 2013) ("5/20/13 D&O"), DE #1 at pp. 41-43. Petitioner's *pro se* motion for permission to appeal from that order was denied on January 13, 2014. See Pet. Ex. E, Decision and Order on Application (Jan. 13, 2014), DE #1 at p. 46.

Petitioner then filed, in the Appellate Division, a second common law writ of error *coram nobis*, dated June 14, 2014, arguing that his appellate counsel was ineffective in failing to raise the following three issues on appeal: (1) the People's *Rosario* violation; (2) the People's *Brady*

violation; and (3) trial counsel's ineffective assistance in failing to move to reopen the suppression hearing on the basis of Moreno's trial testimony.  See Aff. in Opp. Ex. S, Petitioner's Second Motion for a Writ of Error *Coram Nobis*, DE #7-4 at pp. 169-76 (produced in part); see also Supp. Aff. ¶ 34.  The Second Department denied petitioner's motion on November 19, 2014, concluding that "appellant has failed to establish that he was denied effective assistance of appellate counsel . . . ."  People v. Beasley, 122 A.D.3d 871, 995 N.Y.S.2d 515 (2d Dep't 2014).  Petitioner did not seek leave to appeal that denial.

By motion dated June 10, 2014, petitioner moved, for a third time, to vacate his judgment of conviction pursuant to section 440.10, based upon newly discovered evidence and actual innocence.  See Aff. in Opp. Ex. U, Petitioner's Third Motion to Vacate his Judgment of Conviction, DE #7-4 at pp. 205-21.  Petitioner attached to his section 440.10 motion a notarized letter signed by Raul Figueoa ("Figueoa"),[8] in which Figueoa alleges that on the day of petitioner's arrest, Figueoa saw Moreno enter petitioner's car with a bag of cocaine in petitioner's absence.  See id. at p. 223.  The Figueoa letter also states that Moreno had told Figueoa that Moreno left the cocaine in petitioner's car.  See id.  Also attached to petitioner's third motion to vacate was a notarized letter from Moreno, dated May 19, 2014, in which Moreno attests that Figueoa was the person who drove Moreno to the location where Moreno was ultimately arrested on May 3, 2005.  See id.  On December 23, 2016, Supreme Court Justice Miriam Cyrulnik denied petitioner's third motion to vacate.  See Supp. Aff., Ex. W, Decision and Order (December 23, 2016) ("12/23/16 D&O"), DE #20-1 at pp. 53-63.  Petitioner has not applied for permission to appeal this order.

---

[8] Raul Figueoa's name is spelled inconsistently by the parties; based on a review of the notarized letter signed by the affirmant, this Court adopts the spelling "Figueoa."

As of the time of this opinion, petitioner has been released from prison but remains on supervised release.[9]

**B.  Federal Habeas Petition**

On March 10, 2014, petitioner timely filed the instant Petition in the United States District Court for the Eastern District of New York, seeking federal habeas relief on six grounds. See Pet.; see also Supp. Aff. ¶ 39.  First, petitioner contends that the trial court violated petitioner's statutory right to a speedy trial under section 30.30 by rejecting petitioner's argument that the People were chargeable with the 13 days from August 17 to August 30, 2005.  See Pet. at 4-5 (Ground One).  Second, petitioner argues that his trial counsel provided ineffective assistance because trial counsel: (1) did not preserve for appellate review the speedy trial argument that the 13 days from August 17 to August 30, 2005 were chargeable to the People; (2) failed to object to the nondisclosure of *Rosario* and *Brady* material; (3) failed to object to Officer Miedreich's trial testimony regarding Moreno's statements at the 75th Precinct and failed to seek a limiting instruction regarding that testimony; (4) failed to request that Moreno testify before the grand jury; (5) failed to call Moreno as a witness at the suppression hearing; and (6) failed to call Senovia Knight as a witness.  See id. at 6-11 (Ground Two).  Third, petitioner claims that his appellate counsel provided ineffective assistance by not making the following arguments: (1) the police unlawfully stopped petitioner's car and seized the cocaine inside the vehicle; (2) the trial evidence failed to prove beyond a reasonable doubt petitioner's knowledge of the cocaine in his car; (3) the prosecution committed *Rosario* and *Brady* violations; (4) trial counsel was

---

[9] According to the New York State Department of Corrections online inmate locator, petitioner's Conditional Release Date was November 24, 2017, and his Post-Release Supervision Maximum Expiration Date is March 3, 2021.  As long as petitioner remains on supervised release, his release from custody does not render his Petition moot.  See Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting the possibility of revocation and additional jail time is considered to be 'custody.'").

ineffective in failing to (a) preserve for review the claim that the People were chargeable with the 13 days from August 17 to August 30, 2005 under section 30.30, (b) object to the People's *Rosario* and *Brady* violations, and (c) call Moreno as a witness at the pretrial suppression hearing; and (5) the People improperly changed their argument before the New York Court of Appeals.  See id. at 11-14 (Ground Three).  Fourth, petitioner claims the prosecution violated its discovery obligations under *Rosario* and *Brady* by not providing petitioner with the felony complaint and discovery materials, and not correcting false testimony at the suppression hearing and at the trial.  See id. at 14-18 (Ground Four).  Fifth, petitioner argues that he is actually innocent.  See id. at 18-20 (Ground Five).  Sixth, petitioner states that he was denied a fair trial because the trial court did not give a limiting instruction regarding Officer Miedreich's testimony about Moreno's statements at the 75th Precinct.  See id. at 20-22 (Ground Six).

On July 2, 2014, respondent filed its opposition to the Petition, see Aff. in Opp., and petitioner filed his reply on August 1, 2014, see Reply to Affidavit in Opposition to Petition for a Writ of Habeas Corpus (Aug. 1, 2014) ("Pet. Reply"), DE #8.  After a lengthy stay in the case to afford petitioner the opportunity to exhaust certain claims asserted in pending state court motions, petitioner advised Chief Judge Dora L. Irizarry, the District Court Judge assigned to this case, that his state court proceedings terminated, and he sought an order directing respondent to file a supplemental response to his petition.  See Letter from Lamont Beasley (Aug. 22, 2018) ("8/22/18 Letter"), DE #19 ("Petitioner request[s] that the court . . . order the People to respond to Petitioner's Habeas Corpus [Petition] . . . .").  Respondent filed its response, with attachments, on July 12, 2019.  See Supp. Aff.; see also Supp. Mem.  On June 20, 2019, Judge Irizarry referred this matter to the undersigned for the preparation of a Report and Recommendation.

14

## DISCUSSION

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"),

Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides in pertinent part:

> . . . [A] district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).  "To make that showing, the petitioner must satisfy three hurdles: (1) the

exhaustion of state court remedies, (2) the absence of a procedural bar, and (3) the satisfaction of

AEDPA's deferential review of a state court decision."  Madison v. Colvin, 17-CV-7250, 2019

WL 3321748, at *4 (E.D.N.Y. July 24, 2019) (citing 18 U.S.C. § 2254).  For the reasons detailed

below, petitioner has failed to clear these three hurdles.

I.    **Exhaustion of Claims**

A.  **Legal Standard**

A district court is not permitted to grant habeas relief unless the petitioner has exhausted

all remedies available in state court.  See 28 U.S.C. § 2254(b)(1) ("An application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not

be granted unless it appears that . . . the applicant has exhausted the remedies available in the

courts of the State[.]"); see also Cullen v. Pinholster, 563 U.S. 170, 182-83 (2011).  A habeas

petitioner has exhausted his or her remedies in state court only after "fairly present[ing] federal

claims to the state courts in order to give the state the opportunity to pass upon and correct

alleged violations of [ ] federal rights."  Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011)

(citation omitted); see also Madison, 2019 WL 3321748, at *5 ("Therefore, a petitioner must

show that he fairly presented his federal claim to the highest state court capable of reviewing that

claim.") (citation and internal quotation marks omitted).  Although "fair presentment" does not

require "citing chapter and verse of the Constitution" in proceedings before the state courts, <u>Daye v. Att'y Gen. of State of N.Y.</u>, 696 F.2d 186, 194 (2d Cir. 1982) (en banc), the determination of whether claims have been exhausted requires consideration of "the degree of similarity between the claims that a petitioner presented to the state and federal courts[,]" <u>Smith v. Duncan</u>, 411 F.3d 340, 349 (2d Cir. 2005) (citation omitted).

Even if an individual petitioning a federal court for habeas review has failed to exhaust his or her remedies available in state court, an application for a writ of habeas may nonetheless be denied on the merits. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). This is appropriate where the claim is "plainly meritless" or "patently frivolous." <u>Madison</u>, 2019 WL 3321748, at *5 (citation omitted); <u>see also</u> <u>Hill v. Miller</u>, 15 Civ. 6256 (AT) (JFC), 2016 WL 7188134, at *6 (S.D.N.Y. May 11, 2016) (finding that when a district court is presented with an unexhausted claim, it may (1) stay the petition so the petitioner may raise the claim in state court or (2) take jurisdiction over the claim for the sole purpose of dismissing it), <u>adopted</u>, 2016 WL 7410715 (S.D.N.Y. Dec. 21, 2016). Thus, to the extent that a number of petitioner's claims have not been exhausted in state court, this Court, in its discretion, opts to assess those claims on the merits, and finds them meritless.

**B. Petitioner's Unexhausted Claims**

Respondent contends that the instant Petition includes both exhausted and unexhausted claims. <u>See</u> Supp. Mem. at 20-21, 45-48. These unexhausted claims encompass (1) aspects of petitioner's claim of actual innocence (Ground Five); and (2) parts of petitioner's ineffective assistance of appellate counsel challenge (Ground Three). <u>See</u> <u>id.</u> With respect to petitioner's actual innocence claim, petitioner raised a claim of actual innocence in his third motion to vacate

his judgment (under section 440.10(2)(a)), attaching in support of the motion "new evidence" in the form of a notarized letter from Figueoa supporting Moreno's assertion that Moreno had placed the cocaine in petitioner's vehicle while petitioner was inside Moreno's mother's house. See Aff. in Opp. Ex. U, DE #7-4 at p. 223. Respondent correctly notes that "[petitioner] did not exhaust his state remedies with respect to this motion since he did not apply for permission to appeal to the Appellate Division from the denial of this motion." Supp. Mem. at 21; see Supp. Aff. ¶ 35; see also 8/22/18 Letter ("Petitioner do[es] not wish to [seek] leave to appeal the Supreme Court decision and order, just to be unjustifiably denied . . . . Therefore, Petitioner request[s] that the [C]ourt [ ] order the People to respond to Petitioner's Habeas Corpus [Petition] . . . .").

Second Circuit case law requires a petitioner to seek leave to appeal the denial of a section 440.10(a)(2) motion in order to properly exhaust his or her claims. See Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) ("Until [petitioner] presents his claim to the highest state court – whether or not it seems likely that he will be held to be procedurally barred – he has not exhausted available state procedures."); see also LaRosa v. Kirkpatrixk, 15-CV-07008 (JMA), 2019 WL 1458252, at *12 (E.D.N.Y. Mar. 31, 2019) (noting that the petitioner failed to exhaust his claims because he did not seek leave to appeal the Appellate Division's denial of his second section 440.10 motion) (citing cases). Petitioner herein has not exhausted this aspect of his actual innocence claim by seeking leave to appeal the denial of his actual innocence claim. See Supp. Mem. at 21; 8/22/18 Letter, DE #19 ("At any time, the court can move forward on Petitioner's Habeas Corpus claims that are all preserved for review.").[10]

---

[10] Nevertheless, as respondent observes, this claim is not procedurally defaulted, inasmuch as petitioner "can still exhaust his state remedies with respect to this claim [, by] rais[ing] this claim in a new motion to vacate his judgment of conviction and then seek[ing] permission to appeal to the Appellate Division in the event that the trial court denies that motion." Supp. Mem. at 21 n.5. Respondent requests that this Court

With respect to petitioner's ineffective assistance of appellate counsel challenge, respondent first alleges that petitioner's claim is unexhausted insofar as it alleges that appellate counsel failed to raise *Brady* and *Rosario* claims on appeal.  See Supp. Mem. at 46.  Petitioner raised these arguments in his second *coram nobis* motion, see Aff. in Opp. Ex. S, DE #7-4 at pp. 169-76 (produced in part); see also Supp. Mem. at 46 (summarizing the same), but did not seek leave to appeal the Second Department's denial of petitioner's motion to the New York Court of Appeals, see Letter from Lamont Beasley (February 9, 2015) ("2/9/15 Letter"), DE #11 ("I do not wish to add the issues raised in my second [*coram nobis*] to my writ of Habeas Corpus, so I do not intend to file a petition requesting leave to appeal . . . to the New York Court of Appeals.").  Thus, petitioner failed to exhaust his state remedies with respect to this portion of his ineffective assistance of appellate counsel claim.  See King v. Capra, 15-CV-7403 (ENV)(LB), 2019 WL 1900847, at *6 (E.D.N.Y. Apr. 29, 2019) (habeas petitioner who failed to seek leave to appeal the Appellate Division's denial of two *coram nobis* petitions did not exhaust his ineffective assistance of counsel claim) (citing cases).  And to the extent that petitioner argues that he satisfied the exhaustion requirement by raising these issues in his reply papers or in his application for leave to appeal to the New York Court of Appeals with respect to his first *coram nobis* motion, see Pet. Reply ¶¶ 7-9, respondent is correct that a habeas petitioner cannot exhaust a claim by raising it for the first time in an application for discretionary review, see St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000), or in his reply papers, see Lurie, 228 F.3d at 124; see also Letter Requesting Permission to File a Surreply, DE #9 (citing additional cases regarding the same).

---

deem the claim withdrawn in light of petitioner's decision not to seek leave to appeal to the New York Court of Appeals.  See id. at 21.  This Court declines to do so, and instead, deems this claim unexhausted but still ripe for review on the merits.

Petitioner also alleges that appellate counsel was ineffective in omitting the following grounds from his challenge to trial counsel's effectiveness: trial counsel's failure to (i) obtain discovery materials; (ii) object to the prosecution's *Brady* and *Rosario* violations; (iii) call Moreno as a witness at the suppression hearing. See Pet. at 13. However, neither of petitioner's *coram nobis* motions raised these specific arguments, nor did he otherwise exhaust his state remedies with respect to these claims. Lastly, petitioner claims that his appellate counsel was ineffective in failing to object to the lack-of-preservation argument (concerning the 13-day period under section 30.30) that the prosecution raised for the first time in the New York Court of Appeals. Petitioner likewise never raised this claim in either of his *coram nobis* motions.

A review of the record thus demonstrates that petitioner did not exhaust certain aspects of his actual innocence and ineffective assistance of appellate counsel claims. In any event, for the reasons detailed below, see *infra*, Part IV.B.ii (rejecting petitioner's actual innocence claim on the merits); Part IV.B.iv (rejecting petitioner's ineffective assistance of appellate counsel claim on the merits), this Court concludes that petitioner's unexhausted claims of actual innocence and ineffective assistance of counsel are meritless, and that therefore, the entirety of his Petition should be deemed exhausted, ripe for review, and denied. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (where a habeas petition involves both exhausted and unexhausted claims, and the unexhausted claims are plainly meritless, the habeas court should not hold the proceeding in abeyance to allow exhaustion).

## II.     Procedural Bar

### A.  Legal Standard

"Even if a claim has been deemed exhausted, federal courts generally will not consider a federal issue in a case if the decision of the state court rests on a state law ground that is

independent of the federal question and adequate to support the judgment." Zuniga v. Lamana, 18-CV-5717 (LGS) (JLC), 2019 WL 4124416, at *5 (S.D.N.Y. Aug. 30, 2019) (citation and internal quotation marks omitted).  In such circumstances, a petitioner is procedurally barred from obtaining federal habeas review.  See id.  This procedural bar applies even if the state court addressed the merits of the claim in the alternative but decided the claim on independent procedural grounds.  See Whitlock v. LaValley, No. 13 CV 5772 (RJD), 2019 WL 3754415, at *2 (E.D.N.Y. Aug. 8, 2019); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original).

A federal habeas petitioner may obtain a review of the merits of a procedurally defaulted claim only upon a showing of: (1) "cause for the default and actual prejudice as a result,"[11] or (2) actual innocence such that the "failure to consider the claims will result in a fundamental miscarriage of justice."[12]  Ross v. New York, 18-CV-7219(JS), 2019 WL 3753715, at *5 (E.D.N.Y. Aug. 8, 2019) (citing Coleman v. Thompson, 501. U.S. 722, 750 (1991)).

---

[11] With respect to this first exception, a court will find "cause" if the petitioner can show there exists an objective factor external to the defense that impeded counsel's effort to comply with the state's procedural rule.  See Murray v. Carrier, 47 U.S. 478, 488 (1986).  "Prejudice," meanwhile, exists where there is a reasonable probability that the result of the proceeding would have been different absent the alleged constitutional violation.  See Strickler v. Greene, 527 U.S. 263, 289 (1999).

[12] A fundamental miscarriage of justice is defined as "an extraordinary case where a constitutional violation has probably resulted in conviction of one who is actually innocent[.]"  Murray, 477 U.S. at 496.  A petitioner carries a demanding burden to show actual innocence, as the petitioner must demonstrate factual innocence, not mere legal insufficiency.  See Zuniga, 2019 WL 4124416, at *5.

**B.  Petitioner's Procedurally Defaulted Claims**

A number of petitioner's claims are procedurally barred from federal review as they were decided by a state court on independent and adequate state grounds.  First, with respect to petitioner's statutory speedy trial claim (Ground One), respondent argues that this Court's review is procedurally barred due to the New York Court of Appeals' rejection of this claim on an adequate and independent state ground.  See Supp. Mem. at 3 (noting that the New York Court of Appeals rejected petitioner's statutory speedy trial claim because petitioner failed to comply with New York's contemporaneous objection, or preservation, rule).[13]  The state's highest court determined that petitioner was required to draw the trial court's attention to the specific periods of time he later claimed on appeal were chargeable to the People pursuant to section 30.30, and that petitioner's "failure to preserve his legal argument in Supreme Court precludes any further discussion or consideration of the merits of his claims."  Beasley, 16 N.Y.3d at 293, 921 N.Y.S.2d at 180.

More specifically, the Court of Appeals held that petitioner "failed to identify . . . the argument that the People should be charged with the 13 days between August 17th and August 30th for failing to timely provide the grand jury minutes . . . [and] [b]ecause [petitioner] failed to raise this argument before the Supreme Court, he has preserved no question of law for our review . . . ."  Id. at 292.  Consequently, the state's denial of this claim on the ground that

---

[13] New York State's contemporaneous objection, or preservation, rule requires a party claiming an error to alert the trial court to the specific claimed error at such time that the court has an opportunity to cure any defects.  See N.Y. Crim. Proc. Law § 470.05(2); see also Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) ("New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same") (citation and internal quotation marks omitted).

petitioner failed to contemporaneously object constitutes an independent and adequate state ground, precluding federal habeas review because the state court "'clearly and expressly' state[d] that its judgment rest[ed] on a state procedural bar." Harris, 489 U.S. 263 (citation omitted); see also Robinson v. LaClair, No. 09-CV-3501 (KAM), 2011 WL 115490, at *5 (E.D.N.Y. Jan. 13, 2011) ("It is well-settled that the contemporaneous objection rule has been recognized as a firmly established and regularly followed independent state procedural ground in New York barring federal review of a federal claim.") (citing cases); Ainsley v. La Manna, 18-CV-3738 (PKC), 2019 WL 1407325, at *11 (E.D.N.Y. Mar. 28, 2019) (noting the same and citing additional cases).

Second, petitioner asserts that the People violated their discovery obligations when the trial prosecutor suborned perjury at the suppression hearing and trial (Ground Four). See Pet. at 14-18. Specifically, arguing that the prosecutor deliberately elicited false testimony from Officer Rosa, petitioner cites purported inconsistencies between the officer's trial testimony and his statement in petitioner's felony complaint. See id. at 16-17. Respondent counters that petitioner first raised this claim in his second section 440.10 motion, see generally Aff. in Opp. Ex. P, DE #7-4 at pp. 2-71, and argues that this perjury allegation is procedurally barred because the New York Supreme Court rejected this claim on an adequate and independent state ground, see Supp. Mem. at 13-14. Justice Tomei's May 20, 2013 New York State Supreme Court decision and order did in fact rule that petitioner's perjury claim was procedurally barred under section 440.10(2)(c) because petitioner could have raised this claim on his direct appeal. See Pet. Ex. D, 5/20/13 D&O, DE #7-4 at p. 41 ("[Petitioner's] related claim, that the People knowingly suborned perjury because the arresting officer's trial testimony was more detailed than his statement in the felony complaint, is denied. This claim is based on the trial record and

22

may only be raised on direct appeal. *See* CPL 440.10(2)(c).").

As respondent correctly contends, section 440.10(c)(2) furnishes an adequate and independent state ground barring federal habeas review. See Parks v. Sheahan, 104 F.Supp.3d 271, 284 (E.D.N.Y. 2015) (holding that "[N.Y. Crim. Proc. Law] § 440.10(2)(c) has been recognized by courts in this Circuit as an adequate and independent state law ground when the facts on which the claim is based were in the record presented on direct appeal"); see also Dominique v. Artus, 25 F.Supp.3d 321, 333 (E.D.N.Y. 2014) ("Upon a review of New York law, the rule that a claim based upon a matter of record at trial cannot serve as the basis for review under [N.Y. Crim. Proc. Law] § 440.10 is firmly established and regularly followed in New York.") (citing cases).

Here, petitioner's belatedly asserted claim – that Officer Rosa's testimony at the suppression hearing and trial relating to the details of petitioner's stop varied from what Officer Rosa wrote in petitioner's felony complaint – was apparent on the basis of the trial record and the transcript of the September 11, 2006 suppression hearing, and therefore, should have been brought on direct appeal, but was not.[14]  See generally Aff. in Opp. Ex. B, DE #7-2 at pp. 2-45; see also Supp. Aff. ¶ 18.  This claim is therefore procedurally defaulted, as petitioner did not fairly present this claim to the appropriate state courts "to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights," Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)), and, having proceeded through the direct appeals process, petitioner no longer has state court remedies available with respect to this claim.

---

[14] To the extent that petitioner alleges he belatedly received the felony complaint after his trial due to the ineffective assistance of his trial counsel, this is addressed below, see *infra*, Part IV.B.iii (rejecting this claim on the merits).

Third, petitioner alleges that the trial court violated New York's prohibition against hearsay evidence by failing to give the jury a limiting instruction regarding parts of Officer Miedreich's testimony (Ground 6).  See Pet. at 20-21.  Respondent contends that this claim is procedurally barred from habeas review because it (1) was rejected by the Appellate Division on adequate and independent state grounds; and (2) is procedurally defaulted, as petitioner failed to raise it before the New York Court of Appeals and can no longer raise it in state court.  See Supp. Mem. at 25-28.  Respondent is correct on both counts.

With respect to respondent's first argument, the Second Department rejected petitioner's hearsay claim, stating that "[petitioner's] remaining contentions are unpreserved for appellate review and, in any event, are without merit."  Beasley, 69 A.D.3d at 744, 893 N.Y.S.2d at 203. Respondent argues that New York's contemporaneous objection rule is implicated, which, as a state law ground, is independent of any federal constitutional question.  See Supp. Mem. at 25-28.  As addressed above, the contemporaneous objection rule is recognized as an independent procedural ground that bars federal review.  See Robinson, 2011 WL 115490, at *5.  Multiple state appellate courts have applied the contemporaneous objection rule to a claim that the trial court erred in failing to give a limiting instruction, see Supp. Mem. at 26 (citing cases), and therefore, this claim is barred on adequate and independent state grounds, see Cromwell v. Smith, No. 13 Civ.. 29(KBF), 2014 WL 1280287, at *9 (S.D.N.Y. Mar. 25, 2014) (noting that the petitioner's failure to object to the absence of a limiting instruction is, under the contemporaneous objection rule, an adequate and independent ground, precluding habeas review); Scott v. Fisher, 652 F.Supp.2d 380, 404-05 (W.D.N.Y. 2009) (holding petitioner's claim of an erroneous jury charge to be procedurally defaulted where there was no contemporaneous objection, and the Appellate Division found that the issue was therefore

24

unpreserved).

Respondent's second argument, that petitioner failed to raise his hearsay claim before the New York Court of Appeals, furnishes an additional ground for finding that petitioner's claim is procedurally barred. Petitioner's direct appeal to the New York Court of Appeals did not complain that the trial court violated the prohibition against hearsay by failing to give a limiting instruction, see Aff. in Opp. Ex. E, DE #7-2 at pp. 139-57; instead, petitioner's appellate brief solely addressed petitioner's statutory speedy trial claim under section 30.30, see id. at p. 144. Therefore, having proceeded through the direct appeal process without raising this claim in the state's highest court, petitioner failed to preserve the objection and no longer has an available state court remedy. See Moss v. New York, No. 10-CV-5840 (SJF), 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014) (citing cases).

The three claims listed above are therefore procedurally barred. Petitioner has not articulated any grounds to support a showing of cause and prejudice so as to excuse his procedural default, see infra, Parts IV.B.iii-iv (rejecting petitioner's ineffective assistance of counsel claims on the merits), nor has petitioner established that he is "actually innocent" so as to satisfy the "fundamental miscarriage of justice" exception to the procedural bar rule, see infra, Part IV.B.ii (rejecting petitioner's actual innocence claim on the merits). Regardless, for the reasons discussed hereinafter, all of petitioner's federal claims are meritless and no prejudice resulted from any claimed error.

## III.    State Law Grounds

Under 28 U.S.C. § 2254(a), when a federal district court entertains an application for a writ of habeas corpus on behalf of an individual in custody, the court is limited to deciding whether that custody is "in violation of the Constitution, laws, or treaties of the United States."

28 U.S.C. § 2254(a).  The Supreme Court has held that federal habeas relief "does not lie for errors of state law."  Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law . . . .").  Respondent alleges that all or part of three of petitioner's claims address the misapplication of state law: (1) petitioner's claim that his right to a speedy trial was violated when the trial court denied his motion to dismiss the indictment (Ground One); (2) petitioner's claim that the prosecution violated its discovery obligations under People v. Rosario (part of Ground Four); and (3) petitioner's claim that the trial court violated New York's hearsay prohibition by failing to give an instruction limiting the jury's use of a portion of Office Miedreich's testimony (Ground Six).  See Supp. Mem. at 1-3, 6-7, 23-25.

Because all of these claims rely solely on the alleged misapplication of state law, and do not arise under the Constitution and laws of the United States, federal habeas relief on these grounds is unavailable.

### A.  Speedy Trial Claim (Ground One)

Petitioner argues that his right to a speedy trial was violated when the trial court denied his statutory speedy trial motion pursuant to section 30.30 because 13 days – from August 17, 2005 to August 30, 2005 – should have been charged to the People.  See Pet. at 4-5.  Respondent counters that "this claim is not reviewable by this Court because it raises solely an issue of state law . . . ."  Supp. Mem. at 1.

Petitioner's speedy trial claim, brought pursuant to section 30.30, does not arise under the Constitution or laws of the United States.  "To the extent that [p]etitioner raises speedy trial violations premised on [N.Y. Crim. Proc. Law] § 30.30, a state statutory protection, his claims are not cognizable on federal habeas review."  Bermudez v. Conway, No. 09-CV-1515 (DLI),

26

2012 WL 3779211, at *9 (E.D.N.Y. Aug. 30, 2012).  This Court therefore may not assess this

claim on its merits.  See Douglas v. People of the State of N.Y., 12 CV 3839 (NGG)(LB), 2015

WL 9901710, at *7-8 (E.D.N.Y. Nov. 3, 2015) (holding that a petitioner's speedy trial claims

under section 30.30 do not arise under the Constitution and laws of the United States and are not

cognizable on federal habeas review), adopted, 2016 WL 270079 (E.D.N.Y. Jan. 21, 2016); see

also Cooke v. Graham, No. 06-cv-3053 (DLI)(RER), 2009 WL 3111790, at *7 (E.D.N.Y. Sept.

28, 2009) ("Petitioner's assertion that he was deprived of his right to a speedy trial is based on

[N.Y. Crim. Proc. Law] § 30.30, a New York statutory provision [and] . . . [a]s such, the claim is

not cognizable on federal habeas review."); Singh v. Fischer, No.  03 CV 4128(JG), 2004 WL

2999106, at *4 n.4 (E.D.N.Y. Dec. 29, 2004) (holding that the petitioner's challenge to the state

court's decision regarding petitioner's speedy trial rights under New York State law is not

cognizable on federal habeas review).[15]

### B.  Petitioner's *Rosario* Claim (Ground Four)

Petitioner likewise argues that the People violated their discovery obligations under

People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961), by failing to disclose police

paperwork relating to Moreno.  See Pet. at 14-18.  Respondent rejoins that petitioner's "*Rosario*

claim does not raise a federal constitutional issue" and should be "summarily rejected."  Supp.

Mem. at 6.

"Under New York state law, *Rosario* material refers to the statements of testifying

---

[15] Although at least one court in the Eastern District of New York has construed a *pro se* petitioner's
speedy trial claim to constitute a federal constitutional challenge where the petitioner has not specified the
grounds by which he is making such a challenge, see Safran v. Dep't of Corr. & Cmty. Supervision, No.
12-CV-4160 (PKC), 2014 WL 1757516, at *9 n.16 (E.D.N.Y. Apr. 30, 2014), petitioner herein makes
clear in his Petition that his speedy trial claim is based solely on state statutory grounds, see Pet. at 4
(arguing "that the People were not ready for trial within the speedy trial period mandated by [N.Y. Crim.
Proc. Law.] *§ 30.30*") (emphasis added).

witnesses that must be disclosed to the defense prior to opening statements." Sims v. Artus, No. 7-CV-6187(JFB), 2019 WL 3718024, at *8 (E.D.N.Y. Aug. 7, 2019) (Bianco, J.). Such a claim is not a basis for federal habeas relief; as the prosecution's *Rosario* obligation arises under state law, it does not present a federal question upon which habeas relief may be granted. See Shankle v. Unger, No. 09CV1902(SLT), 2011 WL 1322017, at *8 (E.D.N.Y. Apr. 4, 2011) ("[T]his Court notes that failure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law.") (citation and internal quotation marks omitted); see also Marino v. Superintendent, Franklin Corr. Facility, 17-CV-1650 (PKC), 2019 WL 1232088, at *9 (E.D.N.Y. Mar. 15, 2019) ("But Petitioner's claim regarding the alleged violation of the Rosario rule by the state court does not present a question cognizable by this Court on habeas review.") (citation and internal quotation marks omitted).[16]

### C. Petitioner's Hearsay Claim (Ground Six)

Petitioner further argues that the trial court violated New York law's prohibition on the admission of hearsay testimony by failing to give an instruction limiting the jury's use of a portion of Officer Miedreich's testimony. See Pet. at 20-21. Respondent counters that this claim does not present a federal issue and thus is not reviewable by this Court. See Supp. Mem. at 23.

Respondent is correct on the law. Petitioner's hearsay claim presents only an issue of state, not federal, law. "The admissibility of hearsay as evidence in a trial is a matter pertaining to New York state courts not cognizable on federal habeas review." Simpson v. Donnelly, No.

---

[16] The federal counterpart to New York's *Rosario* rule is the *Jencks* rule, see 18 U.S.C. § 3500 (2018), which requires the federal government in a criminal trial to produce all statements and reports related to the subject matter of the testimony of all government witnesses. See Sims, 2019 WL 3718024, at *8. However, "the *Jencks* rule is an evidentiary rule and its violation does not create a constitutional concern." Id.; see also Bogan v. Bradt, 11 CV 1550 (MKB)(LB), 2014 WL 12714530, at *4 (E.D.N.Y. Nov. 12, 2014) (noting the same and citing cases), adopted, 2017 WL 2913465 (E.D.N.Y. July 6, 2017). Accordingly, a violation of the *Jencks* rule is not an appropriate ground for a grant of habeas relief.

00 Civ. 3284(LTS)(RL), 2002 WL 31681800, at *6 (S.D.N.Y. Nov. 14, 2002) (citation and

internal quotation marks omitted); see also Portis v. Kirkpatrick, 9:16-CV-290, 2016 WL

6811013, at *5 (N.D.N.Y. Oct. 12, 2016) ("Petitioner's hearsay claim is rooted in state law and

would not be cognizable on federal habeas review."), adopted, 2016 WL 6810805 (N.D.N.Y.

Nov. 17, 2016).  As such, this claim is likewise not reviewable as part of the pending Petition.[17]

## IV.    Merits of Petitioner's Federal Habeas Claims

### A.  AEDPA Standard of Review

The AEDPA establishes a deferential standard of review for habeas petitions filed by

state prisoners.  Pursuant to the AEDPA, a federal court may grant habeas relief with respect to a

federal claim adjudicated on the merits in state court only if that adjudication (1) was "contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," or (2) was "based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Notably, "a federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established law

erroneously or incorrectly.  Rather, that application must also be unreasonable."  Gilchrist v.

O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)).

As the Second Circuit clarified in Francis S. v. Stone, while "[s]ome increment of incorrectness

---

[17] At no time did petitioner raise a Sixth Amendment Confrontation Clause claim in regards to Officer Miedreich's testimony, and any such claim would inevitably fail on the merits.  The Confrontation Clause prohibits the admission, at trial, of an out-of-court testimonial statement against a criminal defendant unless "the declarant is unavailable and the defendant had a prior opportunity to cross examine him."  Washington v. Griffin, 876 F.3d 395, 404 (2d Cir. 2017), cert. denied, 138 S.Ct. 2578 (2018). Petitioner cannot plausibly argue that Officer Miedreich's trial testimony regarding his conversations with Moreno denied petitioner the right to confront Moreno with respect to these statements because Moreno not only was available to testify at trial, but testified as petitioner's sole witness.

beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so off the mark as to suggest judicial incompetence." 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted).

A decision involves an "unreasonable application of" Supreme Court precedent if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. The relevant inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. Regarding the second prong of AEDPA, a state court's factual determinations are presumed to be correct. See 28 U.S.C. § 2254(e)(1). Such determinations are unreasonable only where the petitioner rebuts the presumption of correctness by "clear and convincing evidence." Id.

For the reasons that follow, under this deferential standard of review, petitioner has not shown, as to any of his federal claims, an "unreasonable application" of clearly established Supreme Court precedent, nor has he shown that the state court's factual findings were unreasonable.[18]

---

[18] As petitioner is proceeding *pro se*, his Petition is being interpreted to raise the strongest argument that it suggests. See Dowling v. Fisher, No. 11-CV-2025 (SLT), 2014 WL 3611645, at *2 (E.D.N.Y. July 22, 2014) (citing Brownwell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). Nevertheless, the Court "need not act as an advocate for" petitioner. Davis v. Kelly, 160 F.3d 917, 922 (2d Cir. 1998).

**B. Petitioner's Remaining Claims for Relief**[19]

**i.      Claims for Alleged Disclosure Violations (Ground Four)**

Apart from petitioner's *Rosario* claim, which is not cognizable on federal habeas review, see *supra*, Part III, petitioner asserts two additional claims in support of his argument that the prosecution violated its discovery obligations: (1) that the People failed to turn over exculpatory information to the defense prior to trial, in violation of *Brady*, see Pet. at 15-16, and (2) the People purposefully solicited perjured testimony from Officer Rosa, see id. at 16.  This Court addresses each of these claims in turn.

As to the *Brady* claim, petitioner argues that the People failed to disclose (1) what petitioner refers to as his "Complaint Report" (referred to hereafter as the "felony complaint"),[20] and (2) police paperwork relating to Moreno.  See Pet. at 15-16.  Because petitioner raised this claim in his second motion to vacate his judgment of conviction, see Aff. in Opp. Ex. P, DE #7-4 at pp. 17-25, which was denied on the merits, see Pet. Ex. D, 5/20/13 D&O, DE #1 at pp. 41-43, petitioner's *Brady* claim is ripe for review and subject to AEDPA deference.

The prosecutor in a criminal case has a constitutional obligation to disclose exculpatory evidence to the accused.  See McCrae v. Lee, 11-CV-2581 (MKB), 2017 WL 1319809, at *14 (E.D.N.Y. Apr. 7, 2017) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)).  This obligation includes a duty to disclose favorable evidence where such evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at

---

[19] As discussed above, see *supra*, Part III, petitioner's (1) speedy trial claim (Ground One), (2) *Rosario* claim (part of Ground Four), and (3) hearsay claim (Ground Six) are not reviewable by this Court because claims under state law are not cognizable on federal habeas review.  These three claims are therefore not addressed in this section on the merits.

[20] This referenced document is a felony complaint, which commences the criminal action in a case, see N.Y. Crim. Proc. Law § 100.10(5), rather than an internal New York City Police Department Complaint Report.

87.  The prosecution's duty to disclose exists even when there has been no request by the accused, see United States v. Agurs, 427 U.S. 97, 107 (1976), and encompasses both impeachment and exculpatory evidence, see United States v. Bagley, 473 U.S. 667, 676 (1985). In order for a petitioner to succeed on a *Brady* claim, he must show that (1) the evidence is favorable to him, either because it is exculpatory or impeaching; (2) the prosecutor suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material to the defense. See McCrary v. Lee, No. CV-12-2867 (SJF), 2013 WL 784581, at *3 (E.D.N.Y. Feb. 26, 2013). With respect to the materiality prong, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682; see also Kyles v. Whitley, 514 U.S. 419, 434 (1995) (noting that a reasonable probability of a different result exists if the nondisclosure undermines the confidence in the outcome of the trial).  The Supreme Court has further held that "[a] reasonable probability does not mean that the [accused] would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." Id.

Petitioner's *Brady* claim does not withstand scrutiny, and should be rejected.  As an initial matter, petitioner has not shown that the prosecutor suppressed either the felony complaint or paperwork relating to Moreno.  With respect to the felony complaint, see Aff. in Opp. Ex. P, DE #7-4 at pp. 61-62, respondent emphasizes the state court's finding that the felony complaint was provided to the defense on several occasions, first at petitioner's initial appearance following his arrest – more than two years before the start of petitioner's trial.  See Supp. Mem. at 9-10; Pet. Ex. D, 5/20/13 D&O, DE #1 at p. 41 (in rejecting petitioner's second motion to vacate his judgment under section 440.10, Justice Tomei concluded, based on an examination of court

32

records, that the felony complaint "was served upon the defense at his criminal court arraignment, retained in the court file, and served a second time on [petitioner] as an exhibit to the People's response to his speedy trial motion, which was decided nearly a year before [petitioner's] trial").

This Court's independent review of the trial court record is admittedly inconclusive, having been provided with neither the minutes of petitioner's May 5, 2005 initial appearance nor the prosecution's written response (with corresponding exhibits) to petitioner's speedy trial motion. Notably, state law requires that upon arraigning the accused on the felony complaint, the court must "furnish [him] with a copy of the felony complaint." N.Y. Crim. Proc. Law § 180.10(1). Even assuming *arguendo* that the state court violated its obligation, petitioner has offered no evidence to rebut respondent's assertion that the prosecution provided the felony complaint to defense counsel on or about October 26, 2006, approximately ten months before trial, when the prosecution filed its response to petitioner's first section 30.30 motion. See Supp. Mem. at 10; see also Aff. in Opp. Ex. Q, DE #7-4 at p. 85. Furthermore, the September 11, 2006 suppression hearing transcript reveals that defense counsel utilized Moreno's felony complaint in cross-examining Officer Miedreich, see Supp. H. Tr. at 11-12, DE #7-1, and reflects no request by defense counsel for the allegedly outstanding document (petitioner's felony complaint) at the conclusion of the hearing, see id. at 52-57. Hence, petitioner has not established that the prosecution suppressed the "complaint report," either willfully or inadvertently.

In any event, nothing in the record suggests that the felony complaint contains information favorable to petitioner. Petitioner correctly observes that the felony complaint (which is part of the record herein) does not specify (1) that Moreno had set up the May 3, 2005 drug delivery, or (2) that the drugs were on the top of the center console of petitioner's vehicle.

See Aff. in Opp. Ex. P, DE #7-4 at pp. 61-62.  These omissions do not, however, give rise to material inconsistencies with Officer Rosa's testimony at the suppression hearing and/or trial. While the felony complaint may not have been as detailed as petitioner would have preferred, all that is required in a felony complaint is that it contain facts to establish reasonable cause to believe that the accused committed the charged offenses.  See generally N.Y. Crim. Proc. Law §§ 100.15(3) and 100.40(4)(b).[21]

Regarding petitioner's second *Brady* argument, to wit, that the prosecution failed to provide the defense with police paperwork relating to Moreno's role in the case, see Pet. at 15-17, respondent counters that "the hearing and trial minutes show the People furnished [petitioner] with all of the police paperwork relating to Moreno," Supp. Mem. at 10-11.  A review of the record refutes petitioner's argument.  Officers Moreno and Rosa repeatedly testified under oath, both at the suppression hearing and again at trial, that there were no other papers, notes, or other documents relating to Moreno.  See Supp. H. Tr. at 13-14 (Officer Miedreich), 42-43 (Officer Rosa), DE #7-1; see also Trial Tr. at 176, 184-85, 189, 205-06 (Officer Miedreich), 304-06, 309-10, 330, 337 (Officer Rosa), DE #7-1.  And even if this Court were to assume that documents relating to Moreno were suppressed, petitioner has made no showing whatsoever that these papers likely contained information favorable to him.

Petitioner next contends that the prosecution deliberately elicited false testimony from Officer Rosa, suborning perjury at the suppression hearing and trial.  See Pet. at 16-17.  This claim is predicated on petitioner's perceived inconsistencies between (1) Officer Rosa's testimony at the suppression hearing and trial and (2) the felony complaint.  See id. (noting that

---

[21] As the prosecution explained in opposing petitioner's motion to vacate, "the People had a strong reason not to mention Moreno in the felony complaint.  Police informants may be harmed or subjected to witness tampering if their identities become known.  Consequently, the People try to avoid revealing the identity of police informants, if at all possible."  Aff. in Opp. Ex. Q, DE #7-4 at p. 89.

petitioner's felony complaint does not mention that Moreno initiated the drug delivery and that the drugs in petitioner's car were in plain view, and highlighting that, according to the felony complaint, the police stopped petitioner at a police "check point."). Petitioner misrepresents the contents of his felony complaint, which, upon review, makes no mention of a police checkpoint, and states only that Officer Rosa "conducted a check of the official, computerized department of motor vehicles driving record," and "observed said record to indicate that, at the above time, [petitioner] was driving with his privilege to do so having been suspended in the state of New York." Aff. in Opp. Ex. P, DE #7-4 at pp. 61-62.

Petitioner further argues that his being stopped at a police checkpoint "makes it impossible for the drugs to be in plain view." Pet. at 16. This is a specious inference: the fact that an individual is stopped at a police checkpoint does not preclude an officer from observing drugs in plain view upon the officer's approach of the vehicle. Credibility arguments of this kind are for the jury (or the court at a pretrial hearing), not the federal habeas court. See Nedd v. Bradt, 13 CV 5569 (CLP), 2019 WL 2124889, at *19 (E.D.N.Y. May 15, 2019) ("The habeas court is required to defer to the jury's resolution of any conflicts in the testimony and to its assessment of the credibility of the witnesses.") (citation and internal quotation marks omitted); Trial Tr. at 423-25, DE #7-1 (defense counsel argues, in summation, that officers' testimony that drugs were in plain view was not credible). Therefore, this claim lacks merit because the felony complaint does not show that Officer Rosa's testimony was false.[22]

---

[22] Equally unavailing is petitioner's argument that minor variations in Officer Miedreich's accounts as to the timing of Moreno's custodial telephone calls to petitioner establish that "[t]he prosecutor also knowingly introduced perjured testimony at trial . . . ." Pet. at 16-17; see Supp. H. Tr. at 9, DE #7-1; Trial Tr. at 112, 122, 161-62, DE #7-1. A review of Officer Miedreich's hearing and trial testimony reveals varying estimates of time, but no material inconsistencies. See Trial Tr. at 122, DE #7-1 (in voir dire testimony out of the jury's presence, Officer Miedreich noted that Moreno made calls for approximately one-and-a-half hours between 7:45 p.m., when Moreno arrived at the Precinct, and 10:00 p.m., when Moreno started his calls to petitioner); see also id. at 161-62 (Officer Miedreich explained to

### ii.    Petitioner's Claim of Actual Innocence (Ground Five)

Petitioner also claims that he is actually innocent (Ground Five).  See Pet. at 18-20.

Petitioner first raised this claim in his second motion to vacate his judgment of conviction

pursuant to section 440.10, arguing that (1) there were inconsistencies between the felony

complaint and Officer Rosa's testimony, see supra, Part IV.B.i, and (2) information contained in

a sentencing letter submitted to the court by Knight demonstrated petitioner's innocence, see Aff.

in Opp. Ex. P, DE #7-4 at pp. 49-55.  Justice Tomei, in his order dated May 20, 2013, denied

petitioner's motion under a clear and convincing standard, rejecting petitioner's claim of

innocence on the merits.  See Pet. Ex. D, 5/20/13, DE #1 at pp. 42-43 (holding that "[e]ven if this

court were to accept as true the inadmissible hearsay statement contained in [Knight's]

sentencing letter - that the defense witness told his sister that the drugs in the car belonged to him

– that fact does not negate the evidence that [petitioner], who was the car's sole occupant,

knowingly possessed the drugs at the time of his arrest.").

"[A]ctual innocence itself is not a free-standing cognizable ground for habeas review."

Bermudez, 2012 WL 3779211, at *17 (citation and internal quotation marks omitted); cf. District

Attorney's Office for Third Judicial District v. Osborne, 557 U.S. 71, 72 (2009) ("Whether such

a federal right exists is an open question.  We have struggled with it over the years, in some

cases assuming, arguendo, that it exists while also noting the difficult questions such a right

would pose and the high standard any claimant would have to meet.").  Regardless, actual

innocence is an equitable mechanism that allows a petitioner to raise claims that would otherwise

be defaulted in order to correct a "fundamentally unjust incarceration."  Russell v. Rock, No. 08-

CV-1894 (BMC)(RER), 2008 WL 5333327, at *5 (E.D.N.Y. Dec. 19, 2008) (citing Hamilton v.

---

the jury that Moreno made calls beginning at approximately 9:00 p.m. and first called petitioner at
approximately 10:00 p.m.).

Miller, 292 F.Supp.2d 437, 452 (E.D.N.Y. 2003)).[23]

Establishing actual innocence requires the petitioner to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable jury would have convicted him." Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). "Actual innocence means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley, 523 U.S. at 623). In Schlup v. Delo, the Supreme Court stated that a petitioner will not meet the "threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 513 U.S. 298, 329 (1995). To succeed on an actual innocence claim, the Second Circuit has held that such a claim must be both credible and compelling. See Rivas v. Fischer, 687 F.3d 514, 540-41 (2d Cir. 2012). A credible claim is one that is supported by "new reliable evidence . . . that was not presented at trial." Id. at 541 (citing Schlup, 513 U.S. at 324). Meanwhile, to be compelling, the claim of actual innocence must show that "more likely than not, in light of new evidence, no reasonable juror would find [petitioner] guilty beyond a reasonable doubt." Bishop v. Lilley, 17 Civ. 7625 (PGG) (KHP), 2019 WL 1417124, at *5 (S.D.N.Y. Mar. 25, 2019) (citation omitted). In making this determination, the district court must consider "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" House v. Bell, 547 U.S. 518, 538 (2006) (citing Schlup, 513 U.S. at 331-32).

In the case at hand, petitioner fails to support his actual innocence claim with allegations

---

[23] Although the Supreme Court remains undecided on this issue, courts in the Second Circuit have determined that "[t]he current state of the law weighs decidedly against recognizing a free standing actual innocence claim." Ortiz v. Semple, CIVIL ACTION NO. 3:17-cv-167 (VLB), 2017 WL 2702245, at *5 (D. Conn. June 22, 2017).

of new, reliable evidence that demonstrate his actual innocence. Petitioner's claim is predicated

on his alleged ignorance of the contents of the black bag found in the vehicle he was driving at

the time of his arrest. See Pet. at 19. However, based on the record before this Court,

petitioner's writ does not contain the extraordinary type of credible and compelling evidence

necessary to overcome the AEDPA's high bar.

 In filing his second motion to vacate his judgment based, in part, on his claim of actual

innocence, see Aff. in Opp. Ex. P, DE #7-4 at pp. 49-55, petitioner offered one "new" piece of

evidence: a letter that petitioner had submitted to the sentencing court, written by Knight,

Moreno's sister, stating (i) that Knight observed Moreno sitting in petitioner's car on the day of

petitioner's arrest; (ii) that Moreno told Knight to tell petitioner not to go anywhere in the car

until Moreno returned; and (iii) that after petitioner's arrest, Moreno told Knight that the drugs in

question were Moreno's. See id. at p. 71. Knight's letter concluded that "Beasley has been

convicted for something he has nothing to do with" and stated she did "not want him in jail for

something he did not do." Id. Respondent persuasively argues that this letter does not establish

petitioner's innocence because Knight's credibility is questionable, as she had a motive to lie to

protect her brother, Moreno, who had contacted the District Attorney's Office to report that he

was being threatened. See Supp. Mem. at 19; Trial Tr. at 29-32, DE #7-1. Moreover, petitioner

offers no explanation as to why Knight waited to come forward with the information in her

October 16, 2007 sentencing letter, more than two-and-a-half years after petitioner's initial

arrest, and after trial testimony from her brother, Moreno, on petitioner's behalf.

 Even if this Court were to assume the truth of the contents of Knight's letter, the letter

does not compellingly establish petitioner's innocence. Respondent makes two additional

persuasive points relating to the contents of this letter. First, respondent argues that "[i]t strains

credulity to believe that Moreno would have stored $6,000 worth of cocaine in [petitioner's] car, unless [petitioner] was complicit in Moreno's drug dealing." Supp. Mem. at 19-20. One reading of Knight's letter supports this contention, as Knight writes that Moreno told Knight to tell petitioner not to go anywhere in the car until Moreno returned. See Aff. in Opp. Ex. P, DE #7-4 at p. 71. Moreno's statement to Knight could be construed by a jury to imply that Moreno wanted petitioner to wait for him before selling the drugs, thereby suggesting that the two men were acting in concert.   Respondent's second, and more persuasive, argument is that petitioner had ample time to discover the drugs in his car prior to his arrest. See Supp. Mem. at 20. Knight's letter supports this claim. Knight admits that she "can't say [she saw Moreno] put something in [petitioner's] car," only that she saw Moreno sitting in the vehicle while petitioner was inside talking to the mother of Knight and Moreno. See Aff. in Opp. Ex. P, DE #7-4 at p. 71. If Moreno did place the drugs in petitioner's car prior to Moreno's 7:45 p.m. arrest, but petitioner was not arrested until 11:15 or 11:20 p.m., approximately three-and-a-half hours later, a jury could reasonably determine that, at the time of his arrest, petitioner knew of the cocaine in the vehicle, while also giving credence to Moreno's testimony that, earlier that day, he placed the cocaine in the vehicle without petitioner's knowledge.

When petitioner filed his third motion to vacate his judgment of conviction, based on a claim of actual innocence, petitioner offered an additional piece of evidence: an affidavit from Figueoa offered in support of Moreno's claim that Moreno placed the cocaine in petitioner's car without petitioner's knowledge. See Aff. in Opp. Ex. U, DE #7-4 at p. 223. Figueoa's affidavit states that Figueoa met with Moreno on the day of Moreno's arrest at Moreno's mother's house and, upon observing a black bag containing what appeared to be crack cocaine, Figueoa told Moreno that he "wasn't riding with that," prompting Moreno to exit Figueoa's car and place the

bag in the "little blue car."  See id.

Assuming that this claim is exhausted – rather than withdrawn, as respondent contends[24] – the Figueoa affidavit does not rise to the level of a credible or compelling showing of actual innocence.  Respondent argues that the affidavit "suggests only that Moreno may have placed the cocaine in [petitioner's] car in [petitioner's] absence . . . [and] [t]hat did not mean that [petitioner] was unaware of the cocaine in his car three and one-half hours later, when he was making the drug delivery and stopped by the police."  Supp. Mem. at 21-22.  The Figueoa affidavit also does nothing to address the argument that petitioner had time to discover the drugs in the vehicle during the approximate three-and-a-half-hour window between the time that petitioner contends that Moreno put the drugs in the car, and when Officer Rosa arrested petitioner.  In addition, Figueoa's affidavit is dated April 30, 2014, and was presented to the New York Supreme Court approximately nine years after petitioner's initial arrest, and more than six years after Moreno's trial testimony.  No explanation for this lengthy time delay is provided. Further, in denying petitioner's third motion to vacate, Justice Cyrulnik cited additional reasons to doubt the veracity of Figueoa's letter, noting that Figueoa's April 30, 2014 affidavit and Moreno's May 19, 2014 affidavit "were drafted less than three (3) weeks apart, [so] it is reasonable to conclude that they were coordinated," and that "[f]urther evidence of this coordination is the fact that Moreno was aware of the content of Figueoa's April 30, 2014

---

[24] Respondent notes that this claim is not procedurally defaulted because petitioner could plausibly still exhaust his state remedies by raising this claim in a new motion to vacate his judgment of conviction, and if necessary, by seeking leave to appeal to the Appellate Division.  See Supp. Mem. at 21 n.5. Petitioner's letter to the Judge Irizarry states that petitioner does not wish to seek leave to appeal the New York Supreme Court's denial of his third motion to vacate his judgment of conviction but does not address whether he intends to file a new motion to vacate.  See 8/22/18 Letter.  Regardless, because the Petition includes both exhausted and unexhausted claims, and because petitioner's unexhausted claims lack merit, this Court declines to recommend that the District Court hold these proceedings in abeyance to allow exhaustion.  See Rhines, 544 U.S. at 277.

affidavit when he drafted his May 19, 2014 affidavit." See Supp. Aff. Ex. W, 12/23/16 D&O, DE #20-1 at pp. 53-54.   In light of the suspicious circumstances surrounding the submission of Figueoa's letter, including its timing in relation to Moreno's 2014 affidavit, a rational juror could conclude that this new evidence holds little to no weight.

Accordingly, petitioner's actual innocence claim cannot meet the high burden required under the AEDPA, and does not support this Court's granting of habeas relief.  See Damon v. New York, No. 12-CV-2388 (RRM), 2019 WL 1406618, at *3 (E.D.N.Y. Mar. 28, 2019) ("In combination with the additional extensive evidence of guilt introduced at trial . . . , the Court finds that 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (citing Parker v. Ercole, 666 F.3d 830, 835 (2d Cir. 2012)).  The new evidence, as presented, would not have clearly exonerated petitioner, and therefore, his claim of actual innocence fails.

### iii.    Claim of Ineffective Assistance of Trial Counsel (Ground 2)

Petitioner next assails the effectiveness of his trial counsel for failing to do the following: (1) preserve for appellate review the claim that the 13 days from August 17 to August 30, 2005 were chargeable to the People under New York's statutory speedy trial statute; (2) claim that the People violated their discovery obligations under *Rosario* and *Brady*; (3) preserve for appellate review a hearsay objection, and request a limiting instruction, in connection with Officer Miedreich's testimony about Moreno's post-arrest statements at the 75th Precinct; (4) request that the grand jury call Moreno as a witness; (5) call Moreno as a witness at the suppression hearing; and (6) "corroborate Moreno's confession" through his sister, Senovia Knight.  See Pet. at 6-11; see also Supp. Mem. at 31-36; Supp. Aff. ¶ 39.  On direct appeal, the Appellate Division summarily held that petitioner was afforded effective assistance of trial counsel.  See generally

Beasley, 69 A.D.3d at 744, 893 N.Y.S.2d at 203 ("The [petitioner's] claim that he was denied the effective assistance of counsel is without merit . . . ."); see also Pet. Ex. D, DE #1 at pp. 39-43 (Justice Tomei's 4/2/12 and 5/30/13 D&Os denying petitioner's section 440.10 motions and noting that certain ineffective assistance of trial counsel claims could not be heard or reasserted by petitioner).[25]  Properly analyzed under AEDPA's deferential standard, the state courts' holdings were not contrary to, nor unreasonable applications of, clearly established Supreme Court precedent, specifically, Strickland v. Washington, 466 U.S. 668 (1984), and its progeny.

Pursuant to Strickland, a petitioner must satisfy a two-prong test in order to prevail on a federal constitutional claim of ineffective assistance of counsel: he must establish that (1) his counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for counsel's deficient performance.  See Strickland, 466 U.S. at 688-93; see also United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994).  According to the Supreme Court in Strickland, the trial court can address the two prongs in either order, and the court need not "address both components of the inquiry if [the accused] makes an insufficient showing on one."  Strickland, 466 U.S. at 697.

To establish that counsel's representation was ineffective, petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  Strickland, 466 U.S. at 689; see also Constant v. Martuscello, 119 F.Supp.3d 87, 143 (E.D.N.Y. 2015) ("A federal court reviewing a state court's determination regarding ineffective assistance of counsel has been characterized as 'doubly' deferential by the Supreme

---

[25] Petitioner's claim – that he was denied effective assistance of appellate counsel because appellate counsel failed to preserve certain ineffective assistance of trial counsel claims on appeal – is addressed on its merits and should likewise be denied.  See infra, Part IV.B.iv.

Court.") (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 105, 131 (2011)).  A court will presume

that counsel acted reasonably where that attorney was prepared and familiar with the relevant

facts and legal principles.  <u>See</u> <u>Morrison v. Brown</u>, 11-CV-3366 (KAM), 2019 WL 267190, at *8

(E.D.N.Y. Jan. 18, 2019) (citation and quotation marks omitted).  Reasonableness is based on

"prevailing professional norms," and there is a "strong presumption that counsel's actions might

be considered sound trial strategy."  <u>Id.</u> (citation and internal quotation marks omitted).  In

connection with the prejudice prong of the inquiry, "[a] reasonable probability [of a different

outcome] is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466

U.S. at 694.

 None of petitioner's challenges to his trial counsel's effectiveness satisfies <i>Strickland's</i>

dual prerequisites, especially when viewed through the lens of the AEDPA.

<b>a. Failing to Preserve Petitioner's Speedy Trial Claim</b>

 Petitioner first contends that his trial counsel provided ineffective assistance by failing to

preserve for appellate review the claim that the 13 days from August 17, 2005 until August 30,

2005 were chargeable to the People under New York's statutory speedy trial rule, section 30.30.

<u>See</u> Pet. at 6.  Respondent answers that this claim does not pass muster, as the section 30.30

claim was deemed meritless on direct appeal, and "[a] defense attorney cannot be found

ineffective for failing to raise a meritless claim."  Supp. Mem. at 31 (citing <u>United States v.</u>

<u>Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999)).

 It is well-settled law that trial counsel's "[f]ailure to make a meritless argument does not

amount to ineffective assistance."  <u>Arena</u>, 180 F.3d at 396.  In the context of a speedy trial

motion, a defense lawyer's performance does not amount to ineffective assistance unless there is

a reasonable probability that the motion would have been successful absent the alleged omission.

43

See Robinson v. Cunningham, No. 09-CV-1904 (KAM)(LB), 2011 WL 7046020, at *5 (E.D.N.Y. Jan. 4, 2011), adopted, Robinson v. Superintendent, Green Haven Corr. Facility, 2012 WL 123263 (E.D.N.Y. Jan. 17, 2012).  Petitioner contends, in part, that trial counsel was ineffective in failing to (1) adequately argue that the 42-day period between August 17, 2005 (when the People failed to produce the grand jury minutes to the court) and September 28, 2005 (the date to which the proceeding was adjourned) should have been charged to the People, and/or (2) specifically challenge the 13-day period from August 17, 2005 to August 30, 2005, when the People finally provided the court with the grand jury minutes.  See Pet. at 6-7.  As justification, petitioner cites to the New York Court of Appeal's March 24, 2011 decision, where that court reasoned that "petitioner's claim [regarding the 13-day interval] was not properly preserved at the Supreme Court and therefore we cannot review it . . . ."  Beasley, 16 N.Y.3d at 292, 921 N.Y.S.2d at 180.  However, the Court of Appeals' finding that petitioner failed to preserve his legal arguments – and thus, that that court was precluded from considering the merits of petitioner's claim – is not, by itself, evidence of trial counsel's ineffective assistance.

Further, the Second Department did review petitioner's claim as to whether the 13-day period between August 17, 2005 and August 30, 2005 was chargeable to the People, ultimately rendering a 3-2 decision upholding the trial court's denial of petitioner's motion to dismiss the indictment pursuant to section 30.30.  See Beasley, 69 A.D.3d at 744, 893 N.Y.S.2d at 203.  The state court's interpretation of state law is not cognizable on federal habeas review.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); see also DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir. 2004) ("Even where there has been no pertinent decision by the state's highest court, and 'we are left

44

only with the state intermediate court's interpretation of the terms in the state statute[,] . . . we are bound by that interpretation.'") (citation and internal quotation marks omitted).  Because petitioner's argument centers on whether the Appellate Division was correct in its interpretation of New York law, a federal habeas court should not provide the relief requested.[26]

Moreover, while the New York Court of Appeals ruled that it could not consider petitioner's contention on the merits due to his failure to preserve his legal argument, Justice Smith, concurring, addressed the merits of petitioner's claim, concluding that "the preservation here was adequate" and that he "would reach the merits and would affirm the Appellate Division's order, essentially for the reasons stated by the Appellate Division majority."  Beasley, 16 N.Y.3d at 293 (Smith, J. concurring).  The Second Department had upheld on the merits the trial court's denial of petitioner's motion to dismiss the indictment.  Petitioner therefore has not satisfied the second prong of *Strickland*: that, but for counsel's deficient performance, the result of the proceeding before New York's highest court would have been different, in that the New York Court of Appeals would have reversed his conviction.

### b.  Failing to Assert *Rosario* and *Brady* Violations

Petitioner next argues that trial counsel was ineffective in failing to argue that the prosecution violated its discovery obligations under *Rosario* and *Brady* by withholding the petitioner's felony complaint and certain police paperwork.  See Pet. at 8-9.  As previously

---

[26] To the extent that petitioner argues that the Court of Appeals' adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of" the holdings of the Supreme Court, see Williams, 529 U.S. at 412-13, the United States Supreme Court has never issued any holding on the proper application of section 30.30.  Accordingly, the state court's denial of petitioner's claim for ineffective assistance of counsel cannot be considered objectively unreasonable under the AEDPA's deferential standard.  See Baptise v. Ercole, 766 F.Supp.2d 339, 353 (N.D.N.Y. 2011) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (citation and internal quotation marks omitted).

45

discussed, the record is void of any evidence to suggest that the People failed to timely provide the defense with the felony complaint or any police paperwork relating to Moreno.  See *supra*, Part IV.B.i.  Here again, an attorney's performance is not deficient for failing to raise a meritless argument. See <u>Arena</u>, 180 F.3d at 396.  Petitioner thus has satisfied neither prong of the *Strickland* test.

### c.  Failing to Preserve a Hearsay Objection and to Request a Limiting Instruction

Petitioner's third claim assails trial counsel's performance for failing to object – and thus, preserve for appellate review – the prosecution's introduction of certain evidence relating to Officer Miedreich, including Officer Miedreich's testimony about Moreno's calls at the 75th Precinct.  <u>See</u> Pet. at 9-10.

First, it is not clear that such testimony was objectionable.  To the extent that petitioner argues that trial counsel should have objected to Officer Miedreich's testimony about Moreno's statements to petitioner during the cellphone conversations between the two, <u>see</u> Trial Tr. at 164-65, 169, DE #7-1, respondent correctly argues that Moreno's statements to petitioner regarding the drug delivery were part of the criminal *res gestae*, and did not constitute hearsay.  <u>See</u> Supp. Mem. at 33; <u>see also</u> <u>People v. Green</u>, 92 A.D.3d 953, 955, 939 N.Y.S.2d 520, 523 (2d Dep't 2012); <u>People v. Adams</u>, 53 A.D.3d 503, 862 N.Y.S.2d 80, 81 (2d Dep't 2008).  To the extent that petitioner is referring to the statements made by Moreno to Officer Miedreich and recounted by the officer at trial, <u>see</u> Trial Tr. at 120-21, DE #7-1, respondent argues that these statements were not offered for their truth, but instead, for the purpose of explaining to the jury the chain of events culminating in Officer Rosa's stop of petitioner's car.  <u>See</u> Supp. Mem. at 33-34 (citing <u>People v. Tosca</u>, 98 N.Y.2d 660, 661, 746 N.Y.S.2d 276 (2002) (upholding admission of officer's testimony recounting a report by an unidentified cab driver as to a recent encounter with

46

the defendant, offered as background to explain why the police pursued and stopped the defendant)).  Respondent's argument is supported by a review of the trial transcript.  See generally Trial Tr. at 211-12, DE #7-1 (defense counsel confirms that "Sergeant Miedreich's testimony concerning what was said to [Officer Miedreich] by Mr. Moreno was offered for the limited purpose of filling out the narrative to understand the investigation.").

Even if Officer Miedreich's testimony were deemed to constitute objectionable hearsay under New York law, petitioner has not established that trial counsel was ineffective in failing to object to the testimony or to request a limiting instruction.  Defense counsel had a legitimate strategic reason for allowing this portion of Officer Miedreich's testimony into evidence and for not requesting a limiting instruction regarding the same: "the defense wanted the jury to know that Moreno had set in motion the chain of events that led to [petitioner's] arrest."  Supp. Mem. at 34.  Thus, any objection to – or limiting instruction regarding – Officer Miedreich's testimony relating to what Moreno said at the 75th Precinct could undercut, rather than support, petitioner's theory of the case.  In other words, trial counsel's decisions relating to this testimony appear to have been part of a plausible trial strategy.  "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance."  United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 689); see also Freeman v. Burge, No. 05-CV-1585 (JFB), 2009 WL 1468464, at *12 (E.D.N.Y. May 22, 2009) (Bianco, J.) (finding that a failure to object to hearsay testimony did not constitute ineffective assistance because it might have been a part of counsel's strategy).  There is a "strong presumption that counsel's performance falls within the 'wide range of professional assistance' [and petitioner] bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v.

47

Morrison, 477 U.S 365, 381 (1986) (citation omitted).

Nor has petitioner established how the introduction of this evidence prejudiced his case.[27] Much, if not all, of this testimony would have been admitted as rebuttal to Moreno's recounting of the contents of the phone call as a witness for petitioner.  See People v. Knight, 80 N.Y.2d 845, 847-48, 587 N.Y.S.2d 588, 589-90 (1992) (finding that, on rebuttal, the prosecution may introduce evidence that is material to a defense theory); see also Aff. in Opp. Ex. C, DE #7-2 at pp. 97-98 (prosecution notes that Moreno testified to his conversation with the officers during the defense case and that the People would have been entitled to introduce, on rebuttal, the officers' version of that same conversation).

For all these reasons, neither defense counsel's failure to object to portions of Officer Miedreich's testimony, nor his failure to request a limiting instruction regarding the same, rises to the level of ineffective assistance of trial counsel.

### d.  Failing to Request the Grand Jury Call Moreno as a Witness[28]

Petitioner next argues that trial counsel was ineffective in failing to request that the grand jury call Moreno as a witness.  See Pet. at 8.  As discussed above, Moreno testified at trial that

---

[27] At least a portion of Officer Miedreich's testimony regarding statements made by and to Moreno could not prejudice petitioner because it was cumulative of other evidence, including Officer Rosa's testimony and testimony elicited by defense counsel from Moreno.

[28] Petitioner's next three allegations – that trial counsel failed to request that the grand jury call Moreno as a witness, failed to call Moreno as a witness at the suppression hearing, and failed to ascertain whether Senovia Knight would "corroborate Moreno's confession" – are listed together in the Petition under the heading "Trial counsel failed to investigate and prepare at pre-trial hearings and trial." Pet. at 8.  "To prevail on an ineffective assistance claim for counsel's alleged failure to investigate, a petitioner has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced."  Dollison v. Nassau Cty., No. 17-CV-2804 (JFB), 2019 WL 3531522, at *9 (E.D.N.Y. Aug. 2, 2019) (citation and internal quotation marks omitted).  To the extent that counsel's alleged failure to investigate includes potential witnesses, "the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony."  Id. (citation and internal quotations omitted).  Accordingly, this Court addresses petitioner's three witness-related claims separately and assumes that these individuals would have testified to the grand jury, at the suppression hearing, and/or at trial, despite petitioner's lack of evidence to that effect.

the drugs in question belonged to him, not petitioner, and that petitioner had no knowledge that Moreno had placed the drugs in his car.  See Trial Tr. at 26-27, DE #7-1.  This claim likewise does not rise to the level of ineffective assistance of counsel.   To be sure, the failure to call a witness may constitute ineffective assistance of counsel if it is "not based on . . . a plausible strategic calculus[.]"  Pavel v. Hollings, 261 F.3d 210, 222 (2d Cir. 2001).  That said, courts are ill-suited to second-guess decisions of counsel regarding whether to call a particular witness. See Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005).  As the Second Circuit declared in Best, "counsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation."  219 F.3d at 201 (citation and internal quotation marks omitted).  "[L]egitimate strategic reasons for choosing not to call a defense witness include, but are not limited to, where the witness's likely testimony is unknown or where the witness may be unfriendly to the [accused]; where calling a witness may open the door to potentially damaging testimony about the [accused] or other testimony harmful to the [accused]; and where the witness may be subject to effective impeachment."  Marcus v. United States, No. 14-CV-5780 (ARR), 2015 WL 3869689, at *11 (E.D.N.Y. June 22, 2015).

Here, while petitioner's trial counsel ultimately called Moreno as a witness at trial, his decision not to request that the grand jury do the same could be deemed a strategic calculus based on concerns about subjecting Moreno to questioning by the prosecutor in the absence of petitioner's counsel, see generally N.Y. Crim. Proc. Law §§ 190.25(3), 190.25(4)(a), and/or the helpfulness of Moreno's expected testimony in June 2005, more than two years before petitioner's August 29, 2007 trial.  And even if there was a professional lapse with respect to trial counsel's failure to request that Moreno be called as a grand jury witness, this error was rendered

harmless by petitioner's jury conviction.  See Coleman v. Racette, 15 Civ. 4904 (NSR)(JCM), 2019 WL 948401, at *13 (S.D.N.Y. Feb. 27, 2019), adopted, 2019 WL 1455171 (S.D.N.Y. April 2, 2019); see Batchilly v. Nance, No. 08 Civ. 7150(GBD)(AJP), 2010 WL 1253921, at *30 (S.D.N.Y. Apr. 2, 2010) ("A jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."), adopted, 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011).  Considering that the jury at petitioner's trial found petitioner guilty beyond a reasonable doubt despite Moreno's exculpatory testimony, petitioner has not shown a reasonable probability that the outcome of petitioner's grand jury proceeding would have been different had the grand jury heard Moreno's testimony.  See Supp. Mem. at 34-35.  Accordingly, petitioner has not established that trial counsel's omission lacked a plausible strategic rationale or prejudiced petitioner.

### e.  Failure to Call Moreno as a Witness at the Suppression Hearing

Petitioner next claims that his defense counsel erred in failing to call Moreno as a witness at the September 11, 2006 suppression hearing.  See Pet. at 8.  Respondent counters that (1) Moreno's testimony about his arrest and subsequent phone calls would have largely corroborated the suppression hearing testimony of the officers that testified and, in any event, (2) Moreno was not present when Officer Rosa stopped petitioner's car and arrested him, and thus could not provide testimony regarding whether the drugs were in plain view when the vehicle was stopped. See Supp. Mem. at 35-36.

First, as discussed above, courts typically do not second-guess trial counsel's decision whether to call a particular witness.  See Greiner, 417 F.3d at 323.  Here, counsel may have been concerned with Moreno's credibility, or worried that Moreno would offer testimony, under oath,

that could later be used to impeach him should he testify as a defense witness at trial. As for whether the drugs were in plain view, Moreno's hearing testimony would have been immaterial, as Moreno was not at the scene of petitioner's arrest. Second, petitioner does not and cannot show that he suffered any prejudice as a result of counsel's failure to call Moreno to testify at the suppression hearing. Respondent notes that, "[t]o the extent there were conflicts between Moreno's testimony and the officers' testimony, the hearing court was likely to credit the police officers, and not Moreno, an admitted drug dealer." Supp. Mem. at 35-36. This is a persuasive argument, as the jury, in convicting petitioner, apparently credited the testimony of Officers Miedreich and Rosa when evaluating Moreno's contrary testimony regarding the content of his phone conversations at the 75th Precinct.

Petitioner asks this Court to ignore the obvious strategic choice associated with not calling Moreno to testify at the suppression hearing, and to infer both that Moreno's testimony would have been favorable to petitioner and would have resulted in a ruling of suppression. Simply put, based on the record before this Court, this is a bridge too far and, in light of the AEDPA's deferential standard, does not satisfy *Strickland*.

**f. Failing to Call Senovia Knight as a Witness**

Petitioner additionally alleges that defense counsel's failure to call Senovia Knight as a witness rises to the level of ineffective assistance. See Pet. at 8.[29] Knight's notarized letter, dated October 16, 2007 and provided to the court at petitioner's sentencing, maintained that petitioner was innocent, and that Moreno had informed Knight that the drugs found in the Ford Focus belonged to Moreno, not to petitioner. See Aff. in Opp. Ex. P, DE #7-4 at p. 71. The

---

[29] The Petition does not make clear whether she should have been called as a witness as the suppression hearing or at trial. See Pet. at 8 (faulting trial counsel for not "explor[ing] the possibility" that Knight would "corroborate Moreno's confession").

letter also states that Knight observed Moreno sitting in petitioner's car prior to the latter's arrest. See id.  Respondent counters that Knight's testimony as to Moreno's statements constitutes inadmissible hearsay and, even if it were admitted, would not have exculpated petitioner.  See Supp. Mem. at 36.

As discussed above, "[t]he decision of whether to call any witnesses on behalf of [the accused], and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel."  Blond v. Graham, No. 9:12-cv-1849-JKS, 2014 WL 2559032, at *10 (N.D.N.Y. June 6, 2014) (citation and internal quotation marks omitted).  "Such a claim is disfavored in habeas review because allegations of what a witness would have testified [to] are largely speculative."  Parks, 104 F.Supp.3d at 286 (citation omitted).  Petitioner has not shown that at the time of his trial (or suppression hearing), Knight was willing to testify along the lines of the contents of her 2007 letter; assuming she was, trial counsel could have reasonably concluded that Knight's testimony would not have shown that petitioner was unaware of the existence of the drugs in his car at the time of the stop.  Further, as discussed above, see supra, Part IV.B.ii, Knight, whose brother, Moreno, had reported being threatened while at Rikers Island, had a motive to support Moreno and would not have presented as a reliable witness.  Accordingly, petitioner has not met his Strickland burden to show that trial counsel was ineffective in failing to call Knight on his behalf.

### g.  In the Aggregate, Trial Counsel was Effective

Finally, even if petitioner's trial counsel could be faulted in certain respects, it is well settled that not every error or omission by one's trial attorney rises to the level of ineffective assistance of counsel.  See Morris v. Garvin, No. 98-CV-4661(JG), 2000 WL 1692845, at *3

(E.D.N.Y. Oct. 10, 2000) ("Just as criminal defendants are not entitled to a perfect trial, only a fair one, they are not entitled to error-free, perfect representation."). The Supreme Court has directed courts to review "the totality of the evidence before the judge or jury," Strickland, 466 U.S. at 695, and any errors by counsel "must be considered in the 'aggregate,' rather than in isolation," Curry v. Burge, No. 03 Civ.0901 LAK AJP, 2004 WL 2601681, at *26 (S.D.N.Y. Nov. 17, 2004) (citation omitted), adopted, 2005 WL 106490 (S.D.N.Y. Jan. 19, 2005).

In this case, petitioner's defense counsel requested and was granted a pretrial suppression hearing and argued for the suppression of the cocaine recovered by the police. See Supp. H. Tr. at 1-58, DE #7-1. Meanwhile, on September 12, 2005, petitioner's trial counsel also moved to dismiss the indictment, arguing that petitioner had been denied his statutory right to a speedy trial. See generally Pet. Ex. C, 12/14/06 Mem., DE #7-2 at pp. 35-37. During trial, defense counsel thoroughly questioned the prosecution witnesses, emphasizing that petitioner's arrest resulted from information provided by Moreno, who was hoping to obtain leniency from the authorities in his own drug case. See Trial Tr. at 177-92, DE #7-1. Counsel raised, in a timely fashion, multiple evidentiary objections, see, e.g., id. at 149, 157-58, 201-02, 218, 242, 256-59, 294, 302, 362-63, and challenged the introduction of cellphone photographs, ultimately persuading the trial court to preclude the introduction of that evidence, see id. at 263-280, 283-88. Defense counsel also called Moreno as a defense witness at trial, eliciting testimony in which Moreno claimed responsibility for the cocaine recovered by the police, alleging he had placed the cocaine in a closed compartment in petitioner's car when petitioner was not present. See 8/31/07 Trial Tr. at 16-17, 38-39, DE #7-1. In his closing argument, counsel highlighted the prosecution's heavy burden of proof and urged the jury to acquit in light of Moreno's testimony. See Trial Tr. at 415-38, DE #7-1.

In sum, trial counsel zealously defended his client in the face of overwhelming evidence. On the record presented to this Court, the state courts acted reasonably in rejecting petitioner's various *Strickland* challenges, and petitioner has not demonstrated ineffective assistance of trial counsel.

### iv.    Claim of Ineffective Assistance of Appellate Counsel (Ground 3)

Finally, petitioner asserts that he was denied his right to effective assistance of appellate counsel because his attorney, on direct appeal, failed to argue that: (1) the police unlawfully stopped petitioner's car and seized the cocaine; (2) the trial evidence did not prove beyond a reasonable doubt petitioner's knowledge of the cocaine in his car; (3) the People violated their *Rosario* and *Brady* obligations; (4) trial counsel was ineffective in not preserving for review the claim that the People were chargeable under section 30.30 with the 13 days from August 17 to August 30, 2005; (5) trial counsel was ineffective in not objecting to the People's *Rosario* and *Brady* violations; (6) trial counsel was ineffective by not calling Moreno as a witness at the pretrial suppression hearing; and (7) the People improperly changed their legal arguments before the New York Court of Appeals.  See Pet. at 11-14; see also Supp. Aff. ¶ 39.

As a preliminary matter, petitioner has exhausted only three of his claims of ineffective assistance of appellate counsel.[30]  The Appellate Division reviewed the three claims asserted by petitioner, holding that petitioner had failed to meet his burden.  See Beasley, 101 A.D.3d at 743,

---

[30] See generally Aff. in Opp. Ex. T, Respondent's Answer to Petitioner's Second Motion for a Writ of Error *Coram Nobis*, DE #7-4 at pp. 187-88 ("In his motion, [petitioner] contends that his appellate counsel, Jeremy Gutman, was ineffective because Mr. Gutman failed to raise the following claims on appeal: (1) The People violated People v. Rosario, 9 N.Y.2d 286 (1961), by failing to provide the defense with discovery regarding Jermaine Moreno; (2) The People violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to provide the defense with information regarding Moreno; and (3) Trial counsel was ineffective because counsel did not move to reopen the suppression hearing on the basis of Moreno's trial testimony.").

954 N.Y.S.2d at 495.   A review of the state court documents confirms that petitioner fairly

presented these claims to the state courts by informing them of the factual and legal premises of

these claims.   See generally Daye, 696 F.2d at 191.[31]   Petitioner has not, however, exhausted four

aspects of his claim of ineffective assistance of appellate counsel.   See supra, Part I.B.

Regardless, in this Court's discretion, and out of an abundance of caution, this Court addresses

on the merits petitioner's exhausted as well as unexhausted claims.

The Second Circuit has determined that the Strickland standard, set forth above, governs

ineffectiveness claims relating to both trial and appellate counsel.   See Toxey v. New York State

Div. of Parole, 14-CV-0610 (JPO) (RLE), 2017 WL 10398212, at *16 (S.D.N.Y. Nov. 8, 2017)

("On the merits, courts apply the same Strickland standard that applies to trial counsel

ineffectiveness to make a determination on appellate counsel ineffectiveness."), adopted, 2018

WL 4906251 (S.D.N.Y. Oct. 9, 2018).   To establish ineffectiveness of appellate counsel, a

petitioner may demonstrate that his lawyer, on appeal, "omitted significant and obvious issues

while pursuing issues that were clearly and significantly weaker."   Bethea v. Walsh, 09-CV-5037

(NGG), 2016 WL 258639, at *38 (E.D.N.Y. Jan. 19, 2016) (citing Mayo v. Henderson, 13 F.3d

528, 533 (2d Cir. 1994)).   On appeal, however, appellate counsel need not "press every

nonfrivolous argument, even if urged upon him by his client."   Id.   Instead, appellate counsel

should select among the petitioner's claims in order to maximize the likelihood of success.   See

Smith v. Robbins, 528 U.S. 259, 288 (2000).   Accordingly, courts should be "reluctant to

---

[31] Because the Second Department's denial of petitioner's claims cited to Jones v. Barnes, 463 U.S. 745 (1983), a Supreme Court decision, its "analysis, coupled with the fact that this case is factually distinguishable from any previously decided by the Supreme Court, is sufficient to show that the Appellate Division's ruling was not contrary to Supreme Court precedent."   DeVaughn v. Graham, 14-CV-2322 (NGG), 2017 WL 244837, at *17 (E.D.N.Y. Jan. 19, 2017).   This Court is therefore limited in its review of petitioner's claims, and must assess whether the state court applied the governing law unreasonably.   See 28 U.S.C. § 2254(d)(1).

second-guess the reasonable professional judgments of appellate counsel on issues of tactical decision such as which claims to raise on appeal." Bethea, 2016 WL 258639, at *38.

### a. Failing to Challenge the Stop, Search and Seizure

Petitioner first faults his appellate counsel for failing to argue, on direct appeal, that the police unlawfully stopped petitioner's car and seized the cocaine. Pet. at 11-12. In response to petitioner's motion to suppress, litigated at the September 11, 2006 pretrial suppression hearing, the trial court held that an automobile stop is a limited seizure of a person that requires only reasonable suspicion, and that probable cause existed based on Moreno's statements implicating petitioner in criminal activity. See Pet. Ex. F, 9/26/06 Mem., DE #1 at p. 49. The court further held that, because the probable cause standard is more rigorous than that for reasonable suspicion, the vehicle stop was lawful, as was petitioner's subsequent arrest. See id. It also noted that the viewing of the drugs by Officer Rosa likewise provided probable cause for petitioner's arrest. See id.

Petitioner's challenge to the legality of the stop, and, by extension, to appellate counsel's decision not to press that issue on appeal, rests on a misunderstanding of the law. The Petition's reference to "Aguilar" and "Spinelli" (see Pet. at 11) appears to mirror an argument advanced by petitioner in his first *coram nobis* motion, in which he argued that the stop of his vehicle was unlawful in that the information possessed by the officers did not satisfy the "reliability" and "veracity" prongs of the *Aguilar-Spinelli* standard, see Aff. in Opp. Ex. N, DE #7-3 at pp. 17-24.[32] However, under state law, the *Aguilar-Spinelli* standard does not apply to police actions

---

[32] Under New York Law, in order to constitute probable cause for a warrantless arrest, an informant's tip must satisfy the two-pronged *Aguilar-Spinelli* test, see Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), a standard abandoned by the U.S. Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), but retained in New York law: the police must be able to demonstrate (1) the basis of the informant's knowledge and (2) the veracity or reliability of the source of information. See McClary v. Conway, No. 06-CV-2064 (ENV), 2010 WL 3928563, at *6 (E.D.N.Y. Oct.

subject to the reasonable suspicion standard, including car stops.  See Supp. Mem. at 41 (citing

People v. Stevens, 171 A.D.3d 1106, 1107, 98 N.Y.S.3d 239, 241 (2d Dep't 2019)).[33]

Equally meritless is petitioner's argument that appellate counsel should have challenged

the lawfulness of the seizure of cocaine.  Officer Rosa testified that he approached the vehicle, he

shone his flashlight into the car, and noticed an open bag on the center console of the car.  See

Trial Tr. at 232-33, DE #7-1.  In the open bag Officer Rosa observed a white substance that he

believed to be cocaine.  See id.  This testimony established probable cause for the officer to

arrest petitioner and seize the drugs.  See generally People v. Semanek, 30 A.D.3d 547, 548, 816

N.Y.S.2d 569, 570 (2d Dep't 2006) (holding that an officer's observation of marijuana inside the

car gave rise to probable cause to search the car and arrest the driver).  Appellate counsel

understandably chose not to challenge the court's credibility determinations on appeal.

Therefore, the failure to relitigate the issues addressed at the suppression hearing did not

constitute ineffective assistance of appellate counsel.  See generally Arena, 180 F.3d at 396.

### b.  Failing to Challenge the Sufficiency of the Evidence

Petitioner next contends that his appellate counsel failed to argue that the evidence at trial

did not prove, beyond a reasonable doubt, that petitioner had knowledge of the cocaine in his car.

Specifically, petitioner maintains that the evidence presented at trial was insufficient to establish

the requisite mental state to commit the crime charged because (1) Moreno testified that he

---

4, 2010), aff'd, 492 F.App'x 157 (2d Cir. 2012).

[33] Even if the *Aguilar-Spinelli* standard does apply to such car stops, respondent is correct in arguing "the evidence at the suppression hearing satisfied the veracity prong of the *Aguilar-Spinelli* standard, because the police officers were able to corroborate much of the information Moreno provided[,]" including that "Officer Miedreich heard the numerous telephone conversations between Moreno and [petitioner], during which delivery of a 'big 8' was discussed" and that "Officer Rosa subsequently saw a car about one block away from the home of Moreno's mother, which matched the description given by Moreno of the vehicle that would be used to deliver the drugs."  Supp. Mem. at 41-42.

placed the cocaine inside petitioner's car, inside the middle compartment under some papers, without petitioner's knowledge, and (2) Moreno denied mentioning a "big eight" or drugs during his post-arrest calls to petitioner.  See Pet. at 12-13.

Petitioner has not shown any likelihood of a different outcome had appellate counsel challenged the sufficiency of the evidence on appeal.[34]  "Because they see and hear witnesses, the jury is the primary evaluator of 'issues of credibility, as well as the weight to be accorded to the evidence presented'" and "[t]he jury's determination, therefore, should not be disturbed unless it is 'clearly unsupported by the record.'"  Washington v. Fillion, No. 10-CV-00563T, 2012 WL 591399, at *7 (W.D.N.Y. Feb. 22, 2012) (citing People v. James, 35 A.D.3d 762, 763, 825 N.Y.S.2d 776, 778 (2006)).

Here, the jury heard from Moreno, who testified to petitioner's purported lack of culpability, see Trial Tr. at 20-27, DE #7-1, as well as from Officers Miedreich and Rosa, who testified to Moreno's telephonic discussions with petitioner about a "big eight," in the course of Moreno's post-arrest phone calls at the Precinct, see id. at pp. 162, 220.  Implicit in the jury's verdict is the jury's credibility determinations in favor of Officers Miedreich and Rosa and against Moreno.  And even if the jury did credit Moreno's testimony that petitioner was unaware of the drugs when Moreno first placed them in petitioner's car, the jury could reasonably have concluded that petitioner would have discovered the drugs in the three-and-a-half hours between the time when the authorities arrested Moreno and when Officer Rosa arrested petitioner.  Therefore, in refraining from attacking the sufficiency of the evidence, petitioner's appellate counsel could have concluded that the Appellate Division would defer to the jury's credibility findings on these issues – a reasonable assumption because a state appellate court, in reviewing

---

[34] In evaluating the relative strength of an issue on appeal, this Court must consider New York law.  See Washington v. Fillion, No. 10-CV-00563T, 2012 WL 591399, at *5 (W.D.N.Y. Feb. 22, 2012).

the legal sufficiency of the evidence, must accord "[g]reat deference" to the "factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor." People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 763 (1987). As the jury's finding that petitioner had knowledge of cocaine in the vehicle was not "clearly unsupported by the record," James, 35 A.D.3d at 762, 825 N.Y.S.2d at 776, there is no merit to petitioner's claim that appellate counsel was ineffective in failing to raise this argument on petitioner's direct appeal.

### c.  Failing to Challenge Trial Counsel's Treatment of the Section 30.30 Issue

Next, petitioner argues that appellate counsel was ineffective in not raising, on direct appeal, that "trial counsel failed to properly argue Petitioner's [N.Y. Crim. Proc. Law] § 30.30 speedy trial issue." Pet. at 13. Respondent persuasively responds that, given the frailty of petitioner's claim of ineffective assistance of trial counsel, no reasonable probability exists that, but for appellate counsel's failure to raise this claim, the results of petitioner's prosecution would have been different. See Supp. Mem. at 45. "A claim alleging ineffective appellate counsel cannot stand on the merits when a court has already denied the basis for which petitioner argues the appellate counsel was ineffective." Toxey, 2017 WL 10398212, at *16 (citing cases); see also Vinson v. Brown, No. 07 Civ. 2972(VB)(PED), 2011 WL 7640001, at *13 (S.D.N.Y. July 11, 2011) ("An appellate counsel does not have an obligation to raise claims which clearly lack merit."), adopted, 2012 WL 1129271 (S.D.N.Y. Mar. 29, 2012). This Court has already addressed, and found meritless, petitioner's allegation that trial counsel was ineffective in presenting petitioner's section 30.30 speedy trial issue. See supra, Part IV.B.iii.a. Likewise, this claim should be denied.

### d.  Failing to Argue *Rosario* and *Brady* Violations

The Petition additionally alleges that appellate counsel was ineffective in failing to raise

*Brady* and *Rosario* claims on appeal.  See Pet. at 11 ("It is clear from the record that the People never turned over requested discovery absolutely necessary to substantiate probable cause to stop, seize, and search and arrest the Petitioner.  The appellate counsel made no attempt to retrieve this information or raise a [*Brady*] and [*Rosario*] violation claim.").  However, petitioner appears to have abandoned this claim.  In petitioner's Reply, he clarifies that the argument from his second *coram nobis* motion that "[a]ppellate counsel failed to present to Appellate Division that Petitioner was denied [*Brady*] and [*Rosario*] material ordered by the Court" is not being advanced in petitioner's Petition for Writ of Habeas Corpus.  Pet. Reply ¶ 9; see also 2/9/15 Letter (stating the same).  To the extent that petitioner is still seeking habeas relief on this claim, the underlying claim lacks merit.  See *supra*, Parts IV.B.i and IV.B.iii; see also Rolling v. Fischer, 433 F.Supp.2d 336, 351 (S.D.N.Y. 2006) ("there can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless").  Therefore, the state court's denial of petitioner's ineffective assistance of appellate counsel claim with respect to this argument was not contrary to or an unreasonable application of clearly established federal law.  This claim cannot stand.

### e.  Failing to Challenge Trial Counsel's Effectiveness on Three Additional Grounds

Petitioner next argues that his appellate counsel was ineffective in not challenging the following omissions by trial counsel: (1) failure to investigate and obtain necessary discovery; (2) failure to object to the nondisclosure of *Brady* and *Rosario* materials; and (3) failure to call Moreno at the pretrial suppression hearing.[35]  All three claims fail.  As demonstrated earlier, petitioner has not established the existence of additional discovery items withheld by the

---

[35] Although these claims do not appear to be exhausted, see *supra*, Part I.B, this Court addresses them on the merits nonetheless.

prosecution.  See *supra*, Part IV.B.i.  Nor has petitioner shown that trial counsel was ineffective in failing to object to the nondisclosure of *Brady* and *Rosario* materials, see *supra* Part IV.B.iii, or in failing to call Moreno at the pretrial suppression hearing, see *supra* Part IV.B.iii.  Case law in the Second Circuit makes clear that a claim of ineffective assistance of appellate counsel cannot stand where the court has rejected the underlying claim on the merits.  See Toxey, 2017 WL 10398212, at *16 (citing cases); see also Finley v. Graham, No. 12-CV-9055 (KMK) (PED), 2016 WL 47333, at *13 (S.D.N.Y. Jan. 4, 2016) ("Thus, where the underlying ineffective assistance of trial counsel argument is lacking in merit, appellate counsel cannot be deemed to have acted objectively unreasonably or to have prejudiced the [accused] by failing to raise it. . . . A petitioner has no grounds for relief if he or she cannot, at a minimum, show that appellate counsel had a basis for arguing ineffective assistance of trial counsel.").  Accordingly, these three claims, even if exhausted, should not succeed.

### f.   Failing to Challenge the People's Changing Argument Before the New York Court of Appeals[36]

Lastly, petitioner claims that his appellate counsel was ineffective in not raising before the New York Court of Appeals that the People were precluded from "chang[ing] their argument pertaining to the speedy trial issue."  Pet. at 13-14.  Petitioner draws attention to the fact that for the first time in the New York Court of Appeals, the prosecution advanced a preservation argument in opposing petitioner's section 30.30 claim.  See id.  In responding to this aspect of the Petition, respondent argues that because petitioner's appeal to the New York Court of Appeals was discretionary, petitioner had no constitutional right to the effective assistance of

---

[36] In petitioner's Reply to Respondent's Affidavit in Opposition, petitioner states that this claim "was not directly raised as a claim [point] on Petition for a Writ of Habeas Corpus, only applied as Law and Facts to support Petitioner's point that appellate counsel failed to properly argue Petitioner's [N.Y. Crim. Proc. Law] § 30.30 issue . . . ." Pet. Reply ¶ 7 (underscoring omitted).  Because it is not clear whether or not the *pro se* petitioner is pursuing this claim, this Court briefly addresses it on the merits.

counsel on that appeal.  See Supp. Mem. at 47-48.

Petitioner's argument fails for myriad reasons.  First, as respondent correctly notes, no rule prohibits the People from raising a preservation argument, for the first time, on appeal to the New York Court of Appeals.  See id. at 48 (referring to N.Y. Crim. Proc. Law § 470.35(1)).  Assuming *arguendo* that the argument now challenged by petitioner was improper, petitioner was not entitled to effective assistance of counsel on his discretionary appeal to the New York Court of Appeals.  In a non-capital felony case, a criminal defendant in New York has no right to appeal to the New York Court of Appeals.  See Dominique, 25 F.Supp.3d at 339 n.8 (citing N.Y. Crim. Proc. Law § 460.20(2)(a)).  Instead, such appeals in state court are considered discretionary.  See Chalk v. Kuhlmann, 311 F.3d 525, 528 (2d Cir. 2002).  The Supreme Court has held that a criminal defendant has no federal right to counsel with respect to discretionary appeals.  See Ross v. Moffitt, 417 U.S. 600, 610-11 (1974).  "Because a criminal defendant has no federal right to counsel with respect to discretionary appeals, a criminal defendant has no right to effective assistance of counsel with respect to a discretionary appeal."  Dejesus v. Perez, 16 Civ. 2552 (LTS) (HBP), 2016 WL 6662269, at *2 (S.D.N.Y. Nov. 9, 2016) (citing cases).  Even assuming *arguendo* that the failure of petitioner's appellate counsel to object to the People's preservation argument fell below the minimum standards required by law, petitioner's constitutional rights were nevertheless not violated because petitioner had no right to effective assistance at that stage.  Finally, petitioner does not satisfy *Strickland's* prejudice prong because he has not shown that, but for respondent's allegedly improper argument, petitioner would have succeeded on his appeal to the New York Court of Appeals.

Therefore, as petitioner cannot be denied effective assistance of appellate counsel with respect to this part of his appeal, petitioner's claim should fail.

### g.  In the Aggregate, Appellate Counsel was Effective

As a last step, "[t]he court finally assesses whether the cumulative effect of errors allegedly made by Petitioner's appellate counsel justifies a finding of ineffective assistance of counsel." DeVaughn, 2017 WL 244837, at \*22; see Eze v. Senkowski, 321 F.3d 110, 135-36 (2d Cir. 2003) (court "assess[es] the aggregate effect of these alleged errors to determine whether their cumulative weight rises to the level of constitutionally deficient conduct").  No such finding is justified here.  Appellate counsel acted competently, filing a 36-page brief with the Appellate Division, on petitioner's behalf, which included a detailed statement of facts with references to the record and a thorough discussion of these facts in relation to the law.  See Aff. in Opp. Ex. B, DE #7-2 at pp. 2-45.  Appellate counsel also filed a 19-page reply brief in response to the People's brief.  See Aff. in Opp. Ex. D, Petitioner's Appellate Division Reply Brief, DE #7-2, at pp. 116-37.  And after the Second Department affirmed petitioner's conviction, by a three-to-two vote, appellate counsel obtained permission to appeal to the New York Court of Appeals, filing a substantial main brief and reply brief on petitioner's behalf.  See Aff. in Opp. Ex. E at pp. 139-57; see also Aff. in Opp. Ex. G, Petitioner's New York Court of Appeals Reply Brief, DE #7-2 at pp. 217-35.

Based on a review of each aspect of petitioner's claim of ineffective assistance of appellate counsel, both individually and cumulatively, this Court concludes that habeas relief on these grounds is not warranted.

### CONCLUSION

For the foregoing reasons, this Court recommends that Beasley's Petition be denied in its entirety.  Any objections to the recommendations contained in this Report and Recommendation must be filed with Chief Judge Dora Lizette Irizarry on or before November 8, 2019.  Failure to

file objections in a timely manner may waive a right to appeal the District Court order.  See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d

15, 16 (2d Cir. 1989).

The Clerk is requested to enter this Report and Recommendation into the ECF court file,

and to transmit a copy to petitioner, via Federal Express, at the following address:

Lamont Beasley
993 E. 42nd Street
Brooklyn, NY 11210

**SO ORDERED.**

**Dated:**    **Brooklyn, New York**
         **October 22, 2019**

/s/     **Roanne L. Mann**
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**